PEOPLE *v.* LEE.

SAME *v.* BANNERMAN.

1. CRIMINAL LAW—AIDING AND ABETTING—PUNISHMENT.
   One who aids and abets in the commission of an offense in this State may be prosecuted and, on conviction, punished as if he had directly committed the offense (CL 1948, § 767.-39).

2. SAME—TWO OR MORE ACTS CULMINATING IN A FELONY—JURISDICTION.
   A felony which consists of or is the culmination of 2 or more acts done in its perpetration may be prosecuted in any county in which any one of the acts was committed (CL 1948, § 762.8).

3. SAME—VENUE—CONSTITUTIONAL LAW—VICINAGE.
   The legislature may fix the venue of criminal prosecutions in a county or district other than that in which the crime was committed, since the elimination of the provision in the Constitution restricting the trial to the vicinage (Const 1835, art 1, §§ 9, 10; Const 1850, art 6, § 28; Const 1908, art 2, § 19).

4. SAME—VENUE.
   The trial of a criminal prosecution should be by a jury of the county or city where an offense was committed except as the legislature has otherwise provided (Const 1908, art 2, § 19).

REFERENCES FOR POINTS IN HEADNOTES

[1] 14 Am Jur, Criminal Law § 107.
[2–8] 14 Am Jur, Criminal Law § 234.
[2–8] Constitutionality of statute for prosecution of offense in county other than that in which it was committed.   76 ALR 1034.
[10] Generally as to corroboration, see 58 Am Jur, Witnesses § 805 *et seq.*

5. SAME—VENUE—STATUTES—CONSTITUTIONAL LAW—TWO OR MORE ACTS CULMINATING IN A FELONY.

   A statute providing for venue of prosecution for crime in any county in which one or two or more acts culminating in a felony was committed is not unconstitutional as depriving the accused of a right to trial by jury (Const 1908, art 2, § 19; CL 1948, § 762.8).

6. SAME—MURDER—JURISDICTION—STATUTES.

   Statute conferring jurisdiction to prosecute crime in any county in which any one of two or more acts culminating in felony took place conferred jurisdiction upon recorder's court of the city of Detroit to try prosecution for murder, where victim was inveigled into automobile within city limits by 2 of 5 defendants, pursuant to a prearranged plan, and transported to another county where appellants participated in killing him (CL 1948, §§ 750.316, 762.8).

7. SAME—MURDER—DUE PROCESS—VENUE.

   A want of due process was not shown by appellants because of their prosecution for murder in which they had participated, where they were prosecuted in city of their residence and in which victim was inveigled into car and they failed to show they were put to disadvantage in procuring witnesses or attending trial there as compared with trial in county in which the killing took place (CL 1948, §§ 750.316, 762.8).

8. SAME—MURDER—CONSPIRACY—VENUE.

   Appellants were properly found guilty of murder in recorder's court of the city of Detroit, where there was evidence showing that they and other conspirators had participated in the formation of a conspiracy before the commission in Detroit of the act of inveigling the victim into an automobile by other members of the conspiracy and taking him to another county where appellants participated in shooting him (CL 1948, §§ 750.316, 762.8).

9. HOMICIDE—INCLUDED OFFENSES—CONSPIRACY—VENUE.

   Charge to jury that their verdict must be either murder in the first degree or not guilty was not error, because jury was not allowed to find defendants guilty of any lesser included offense, where theory of prosecution was based on carrying out of a conspiracy to murder in county other than that of prosecution and in which conspiracy had been formed and at least 1 act culminating in murder performed (CL 1948, §§ 750.316, 762.8).

10. Same—Corroboration of Discredited Witness—Evidence.
   Evidence was sufficient to permit jury to find appellants guilty
   of murder in the first degree, where there was corroboration
   of a discredited witness' testimony and some of his testi-
   mony gave details difficult to fabricate (CL 1948, § 750.316).

Appeal from Recorder's Court for the City of De-
troit; Ide (O. Z.), J.   Submitted April 17, 1952.
(Docket Nos. 82, 83, Calendar Nos. 44,955, 45,026.)
Decided June 27, 1952.

Ervin Lee and John Bannerman were convicted
of murder in the first degree.   Both appeal from
denial of delayed motion for new trial.   Cases heard
on same record.   Affirmed.

*Richard Nahabedian,* for defendant Lee.

*Lee C. McManus,* for defendant Bannerman.

*Frank G. Millard,* Attorney General, *Edmund E.
Shepherd,* Solicitor General, *Gerald K. O'Brien,*
Prosecuting Attorney, *Ralph Garber,* Chief Assis-
tant Prosecuting Attorney, and *Garfield A. Nichols*
and *George W. Miller,* Assistant Prosecuting Attor-
neys, for the people.

Reid, J.   On leave granted, defendant Ervin Lee
appealed from his conviction and sentence pro-
nounced December 4, 1936, for murder in the first
degree.*   Defendant John Bannerman, who had also,
on leave granted, appealed from his conviction and
sentence for complicity in and guilt of the same of-
fense, stipulated and agreed that his cause be con-
solidated with and governed by the same decision as
may be rendered in the Lee case.   One record but
separate briefs for the 2 defendants have been filed

---

* CL 1948, § 750.316 (Stat Ann § 28.548).—Reporter.

and the 2 appeals are herein considered and disposed of.

Beginning on November 18, 1936, defendant Ervin Lee together with codefendants Harvey Davis, John Bannerman, Roy Lorance and Charles Rouse, were tried by a jury in the recorder's court for the city of Detroit on an information charging (in part) that the said defendants:

"Heretofore, to-wit, on the 25th day of May A.D. 1936 at the said city of Detroit, in the county aforesaid feloniously, wilfully and of their malice aforethought, did kill and murder one Silas Coleman; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan."

On arraignment defendants refused to plead; a plea of not guilty was entered by court order.

All of the defendants were convicted of first-degree murder by the jury and sentenced to life imprisonment by the court. In 1937, a motion for new trial was denied by the original trial judge. Approximately 10 years later a motion for new trial was filed with the successor trial judge on September 10, 1947. An amended motion for new trial dated March 16, 1948, was filed by present counsel, heard, taken under advisement and denied on October 12, 1948.

On the trial before court and jury, the people's witness, Dayton Dean, testified as follows: In the week of May 25, 1935 [1936], one Dayton Dean (not a defendant), Harvey Davis and Charles Rouse conspired together to obtain a negro to take out to the lake (Rush lake, Livingston county, Michigan) where Harvey Davis was going to have a party "with some of the boys in his outfit;" he (Davis) wanted to get hold of a negro "to have a little target practice and have a little excitement out there." On Wednesday or Thursday night of that week the witness Dayton

Dean talked to defendant Charles Rouse and told him that Davis and some of the boys were going to have a party out at the lake and that they wanted to get hold of a negro and take him out and "they were going to kill him." Rouse stated that he had "just the man for you;" that the fellow was working for him and he had not been working very long; that he would be able to take him out all right; that Rouse would make the arrangements. This conversation took place at 19179 Irvington avenue at the city of Detroit. On Friday of the same week, Dean in-formed Davis of the arrangements with Rouse. Davis said he would be out to Rush lake if he was not at home when Dean went over to his home on Saturday night. On Saturday night, May 25th, Charles Rouse picked up the witness, Dayton Dean, at 2764 Second avenue in the city of Detroit; the 2 drove over to the home of Harvey Davis, 775 Ferdinand, city of Detroit; Davis was not at home but the witness, Dayton Dean, knew the way to the lake; Rouse told the witness, Dayton Dean, about Silas Coleman, the negro that he was to meet at 9:30 in the evening on the corner of Meyers road and Grand River in the city of Detroit; the 2 of them then drove to Meyers and Grand River where they found Silas Coleman waiting for them; Dayton Dean got in the back seat and Silas Coleman got in the front seat with Charles Rouse, and they proceeded out Grand River; Coleman said he had a couple of cases of beer at his landlady's place and he was going to have a party when he came back; Charles Rouse told Coleman that "the contractor" [the identity of the contractor being otherwise undisclosed] went out to the lake, and that he [Coleman] "would have to go out there to get his money and that he could go along with us."

The witness, Dayton Dean, further testified: Rouse, Dean and Silas Coleman, the deceased, went

to Brighton, turned at the red light there and drove out to Rush lake to the cottage. Dean got out of the car, entered the kitchen and saw a long table at his right where Harvey Davis and his wife, Jack Bannerman and his wife, Lorance and his wife and Ervin Lee and his wife were seated at the table drinking. Dean told Harvey Davis he wanted to see him in the front room; Dean told Harvey Davis that "we had the colored fellow out there in the car," and explained to him that Charley (Rouse) had got him to the lake by telling him he was going to get his money; Davis called Lee, Lorance and Bannerman into the other room and told them, "We've got the fellow we were talking about;" Davis told Dean to go out and tell Charley Rouse that this contractor had gone out on the lake fishing and they would lead the way; Davis told the boys (Lee, Lorance and Bannerman) to get their guns and see that they were loaded; they got their guns—38's, and Dean had his gun, a .45 automatic, with him; Davis told Jack Bannerman to get into the car with Dean and that Lee and Davis would ride in Lorance's car; the defendants got into the 2 cars, drove back on the highway and went to the town of Pinckney, turned left and went up the first road, turned right and drove about a mile; turned right on another road and drove possibly a half a mile or mile, until they came to a bridge that "crossed like a big marsh" and stopped with the rear wheels of Lorance's car on the bridge.

Dean further testified: Davis, Lorance and Lee got out of the car and walked back to the car occupied by Dean, Bannerman, Rouse and Silas Coleman; Bannerman and Dean got out of the car and walked over on the opposite side of the bridge where Davis, Lee and Lorance were; Davis said, "Well, let's go and get him;" as they started back across the bridge, Silas Coleman came around the back of the car facing them and Davis fired first; then Lorance, Lee

and Bannerman fired; the negro attempted to say something, gave a half-right-about face and ran down the road in the direction the cars were facing; the defendants began shooting after him as he ran; he (Coleman) gave a left-face and jumped in the swamp; they emptied their guns after him when he jumped in the swamp; they then drove back to the cottage, had a drink and then Charley Rouse and the witness, Dayton Dean, drove back to Detroit; on the way back Charles Rouse gave Dayton Dean $10 of Silas Coleman's money and told him to divide it up among the boys; there was $8 for Charles Rouse; Monday morning when Dean went to work he told Davis that he had the money and that Davis said not to say anything to the other fellows about it, so Dean gave him $5 and kept $5.

The defendant John Bannerman claims he was not in the city of Detroit and county of Wayne at the time the alleged murder was committed and he claims he was not in the jurisdiction of the recorder's court for the city of Detroit at the time the alleged plan to commit the murder was arranged.

The court charged the jury that the defendant John Bannerman could be found guilty of murder in the first degree if he committed an overt act or participated in the plan within the jurisdiction of the recorder's court. The trial court charged the jury with regard to the included offenses of murder in the second degree or manslaughter as follows:

"I, therefore, charge you that you cannot find the defendants guilty of either one of the lesser offenses, but that your verdict must be either one of guilty of murder in the first degree or not guilty."

The prosecution claims that there was a conspiracy to commit the murder, and that an act necessary to and a step toward its accomplishment was committed in the city of Detroit; that defendants

were conspirators in the conspiracy though not present in the city of Detroit when the act aforesaid was committed in the city of Detroit, which act consisted of inveigling the murdered man, Coleman, into an automobile and conveying him on the road toward the place where he was afterwards murdered, all within the purview of the conspiracy.

The first question we are to consider is whether the recorder's court of the city of Detroit, acquired jurisdiction of the murder, if the prosecution's aforesaid claim has been proven to the satisfaction of the jury.

Our statute, CL 1948, § 767.39 (Stat Ann § 28.979), provides:

"Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense."

Our statute further provides, CL 1948, § 762.8 (Stat Ann § 28.851):

"Whenever a felony consists or is the culmination of 2 or more acts done in the perpetration thereof, said felony may be prosecuted in any county in which any one of said acts was committed."

"By the provisions of the Federal Constitution, criminal trials must take place in the State and district wherein the crime was committed, but it was long ago determined that these provisions apply only to prosecutions in Federal courts." 14 Am Jur, pages 929, 930, citing *Burton* v. *United States,* 202 US 344 (26 S Ct 688, 50 L ed 1057, 6 Ann Cas 362), and other cases.

See, also, *Nashville, Chattanooga & St. L. R. Co.* v. *Alabama,* 128 US 96 (9 S Ct 28, 32 L ed 352), cited in 24 Fed Digest, § 107, Criminal Law.

"In the absence of any limitation by constitutional provision, it seems to be generally recognized that the power of a State legislature to fix the venue of criminal prosecutions in a county or district other than that in which the crime was committed is unrestricted." 76 ALR 1035.

The Constitution of Michigan of 1835 contained the provision in article 1, § 9, "The right of trial by jury shall remain inviolate," and in article 1, § 10, "In all criminal prosecutions, the accused shall have the right to a speedy and public trial by an impartial jury of the vicinage."

The Constitution of 1850 (art 6, § 28) omitted the words "of the vicinage" and the present Constitution, 1908 (art 2, § 19), likewise does not have the words "of the vicinage" qualifying a jury to try a criminal case. The evident purpose of leaving out of the Michigan Constitution the words "of the vicinage" is to permit the legislature some latitude in legislating as to venue of criminal cases.

Defendants cite and rely upon *Swart* v. *Kimball,* 43 Mich 443, which opinion has been criticized on the ground that Justice COOLEY overlooked the fact that the Michigan Constitution of 1850 had omitted the words, "of the vicinage."

In any event, since the decision of the *Swart Case, supra,* the following cases have shown a departure in certain instances from a strict application of the rule that the jury must be of the vicinage, or of the county, so far that there have been upheld as constitutional, 4 statutes of this State creating exceptions or modifications of the rule as to trial by jury of vicinage: *Bayliss* v. *People,* 46 Mich 221; *People* v. *Hubbard,* 86 Mich 440; *People* v. *Peterson,* 93 Mich 27; *Glinnan* v. *Judge of Recorder's Court,* 173 Mich 674 (a change of venue case); *People* v. *Henderson,* 246 Mich 481; *People* v. *Southwick,* 272 Mich 258; *People* v. *Coapman,* 326 Mich 321. We consider that

except as the legislature for the furtherance of justice has otherwise provided reasonably and within the requirements of due process, the trial should be by a jury of the county or city where the offense was committed.

The defendants were tried, not for conspiracy, but for murder. The prosecution claims that a conspiracy was formed by all of the defendants in Detroit to murder some negro, by taking him out to Livingston county and there using him as a target and shooting him; that in pursuance of the conspiracy, Coleman was inveigled into an automobile in the city of Detroit, and transported to Livingston county, where the conspirators, including defendants Lee and Bannerman, fired at the negro, Silas Coleman, and that the death of Coleman was caused by the shots of the conspirators, including both defendants Lee and Bannerman.

Defendant Lee claims that because the information charges that the murder was committed in the city of Detroit, which city is the territorial limit of the criminal jurisdiction of the trial court, the trial court did not have jurisdiction of murder actually committed in Livingston county.

The statute, last above quoted, CL 1948, § 762.8, is not invalid under the provisions of either the Federal Constitution or the Constitution of the State, so far as concerns any reasons advanced by defendants in this case.

The information falls within the meaning of the statute, CL 1948, § 762.8.

The statute validly confers on the trial court venue of the offense in question in this case.

Further, the defendants in this case were prosecuted in the city of Detroit where they lived. It is not shown that they were put to disadvantage in procuring witnesses or attending the trial in Detroit as compared with a trial in Livingston county. There

was no want of due process occasioned by the bringing of the prosecution in Detroit.

Defendant Lee claims the evidence produced on the trial was not sufficient to show defendant Lee implicated in a conspiracy formed in Detroit. There was testimony that the 2 defendants Lee and Bannerman were in Livingston county when Davis said to them (and a claimed co-conspirator Lorance): "We've got the fellow [*i.e.,* Coleman] we were talking about;" and that defendants Lee and Bannerman went with the other alleged conspirators to the place where Coleman was killed, and participated in the killing. There was testimony to support the claim of the prosecution that defendants Lee and Bannerman had made themselves parties to the conspiracy before the commission in Detroit of the act of inveigling Coleman into the automobile and conveying him to Livingston county.

There was testimony to show that 1 act, at least, in carrying out the conspiracy was performed in Detroit, *i.e.,* Coleman was inveigled into the automobile of 1 of the conspirators in Detroit and started toward the scene of his murder.

Defendant Lee further claims that the trial court erred in charging the jury that they could not find the defendants guilty of any of the lesser offenses and that their verdict must be either guilty of murder in the first degree or not guilty. The venue depended on the theory of the prosecution that the murder in Livingston county was committed in carrying out a conspiracy and that 1 act to accomplish the murder occurred in the city of Detroit. The necessary implication was that it was murder of the first degree. If it was found to be not murder of the first degree, in practical effect such finding would eliminate the theory of conspiracy in the form and manner relied on by the prosecution and there would be

no offense of which the trial court could have venue. There was no error.

Defendant Lee claims that because we treated witness Dean as discredited, in *People* v. *Hepner*, 285 Mich 631, there is not sufficient testimony in the record in the instant case, to warrant the sustaining of a verdict of guilty. While in the instant case there is not sufficient testimony to convict defendants Lee and Bannerman without Dean's testimony, yet the testimony of Dean herein is in several phases corroborated. Dean's testimony, in the instant case, seems not so inconsistent as his testimony was found to be in the *Hepner Case, supra*. Dean's testimony in the instant case gave details difficult to fabricate of the shooting of Coleman, and actions of the parties leading up to the shooting.

The record shows sufficient grounds for the jury's belief that Dean was telling the actual truth as to the murder of Coleman and the parties participating in the murder.

We do not conclude to set aside the verdict on the ground that it is not supported by sufficient testimony.

In each case, the conviction and judgment is affirmed.

DETHMERS, BUTZEL, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred.

NORTH, C. J., did not participate in this decision.