PEOPLE v DANSBY

1. LARCENY—PLEA OF GUILTY—ATTEMPT—FACTUAL BASIS.

The acceptance of a defendant's plea of guilty of attempted larceny by trick was not improper because there were claimed inconsistencies in the accounts of the facts given by the defendant and the complainant where the discrepancies concerned only the method by which the complainant was relieved of his money and the defendant admitted that he was "out playing what you call a confidence game"; the discrepancies were immaterial and the facts elicited from the defendant were sufficient to support his plea of guilty where the accounts of the defendant and the complainant gave the factual basis of the operation of the defendant.

2. LARCENY—LARCENY BY TRICK—FALSE PRETENSES.

A successful scheme of obtaining money by involving the complainant in a fixed game of chance constitutes the crime of larceny by trick rather than obtaining money by false pretenses, because the complainant could not have been deemed to have intended to part with the title to money lost in a game of chance where, under state statutes, gambling of money on games of chance is prohibited, the losing of money in such a game does not pass title to the winner, and the loser is entitled to recover such losses (MCLA 600.2939, 750.301, 750.314).

3. LARCENY—LARCENY BY TRICK—JURISDICTION.

A trial court has jurisdiction over a felony prosecution where a part of the transaction occurred within its jurisdiction; therefore, the Recorder's Court of Detroit had jurisdiction over a criminal prosecution for larceny by trick where the complainant was induced by the defendant to cash a check at a bank in Detroit, the proceeds of which were a part of the object of the larceny by trick practiced by the defendant upon the complainant (MCLA 762.8).

REFERENCES FOR POINTS IN HEADNOTES
[1] 50 Am Jur 2d, Larceny § 136.
[2, 3] 50 Am Jur 2d, Larceny § 7.

Appeal from Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted Division 1 May 11, 1973, at Detroit. (Docket No. 14724.) Decided June 28, 1973.

Carl L. Dansby was convicted, on his plea of guilty, of attempted larceny by trick. Defendant appeals. Affirmed and sentence modified.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Arthur N. Bishop,* Assistant Prosecuting Attorney, for the people.

*Judith K. Munger,* Assistant State Appellate Defender, for defendant.

Before: J. H. GILLIS, P. J., and HOLBROOK and BASHARA, JJ.

HOLBROOK, J. Carl Luther Dansby, defendant, was charged in an information with larceny by trick, in violation of MCLA 750.356; MSA 28.588, and pled guilty to the lesser included offense of attempted larceny by trick. He was sentenced to a term in prison of 2 to 2-1/2 years. MCLA 750.92; MSA 28.287.

After being informed of his constitutional rights the defendant informed the trial court that he desired to plead guilty to attempted larceny by trick. The trial judge questioned the defendant concerning the facts surrounding the offense and then the complainant stated her version of what had taken place. These two accounts were not consonant in several particulars. The defendant now claims that because of these inconsistencies

the trial judge should not have accepted his plea of guilty. Defendant also asserts that there was no factual basis established by the court's questioning of the defendant justifying the acceptance of the plea of guilty to the offense of attempted larceny by trick.

Neither of these alleged errors are tenable on this appeal. The accounts by the defendant and the complainant gave the factual basis of the operation of the defendant and his accomplice, Mr. Lewis. Defendant met the complainant in a bank and showed her a roll of bills purported to be $10,000, which in fact was stage money. Defendant also represented he was a stranger in Detroit, that his home was in the Bahamas, whereas in fact he was from Detroit. The accomplice, Mr. Lewis, met them as they left the bank and worked with the defendant in urging the complainant to withdraw $2,500 from the bank, which she did by obtaining $1,250 in cash and a bank money order for $1,250. She was convinced by defendant and Mr. Lewis to cash the bank money order at a bank in the City of Detroit. The three of them then went to a motel in Hamtramck where the complainant was relieved of her $2,500. The complainant and the defendant disagree as to how the complainant was relieved of her $2,500, which we deem to be immaterial in view of the defendant's statements to the court at his plea hearing, *viz.:*

*"Q. [The Court]:* All right. Tell me what happened.

*"A. [defendant]:* Well, sir, New Year's Eve, 1969, me and Lewis, we were out playing what you call a confidence game. I met this lady in the bank, and she seen my money. We talked, and she said that she would help me go to the Western Union. So we leave the bank going to the Western Union.

\*   \*   \*

"*Q.* You mean you told her you had $10,000.

"*A.* Yes, sir.

"*Q.* But you didn't have $10,000—is that what you're telling me?

"*A.* No, I didn't have 10,000, sir.

"*Q.* So what you are saying is that she was trying to win your 10,000?

"*A.* Absolutely.

"*Q.* Well, where is the trick? That's what I am trying to find out.

"*A.* Well, the trick was when we gambled. We started playing this game of chance, three-card monte, and she would throw the cards around, but first they told me to turn my back so I couldn't see her mix them. I would turn around. I was supposed to guess where the card was. So I missed a couple of times, see. When we played for the 2500 I won. Then I played again, turning my back again, she mixed the cards up again, and I won again for the $2,000 check.

"*Q.* How much did you bet?

"*A.* I was betting—we was betting like at first we started out betting 500, you know, a thousand.

"*Q.* Well, how could you be sure you were going to win?

"*A.* Well, see, you know, three-card monte is like a circus game, they gamble where you think a card is in one place and it's somewhere else.

"*Q.* How do you know? See, I don't know all of this. I'm trying to find out.

"*A.* Well, see, the guy was with me, he just let me know. When she mixed the cards, I had my back turned. I knew the three cards, you know, little markings on the cards.

"*Mrs. Milligan [assistant prosecutor]:* May I ask a question, sir, of the defendant?

"*The Court:* Yes.

"*Mrs. Milligan:* Were you and the other man working together?

"*Defendant:* Yes, we were."

So it was established by the defendant's state-

ments that he and his accomplice were "out playing what you call a confidence game" and further that through the efforts of the accomplice Mr. Lewis and defendant they obtained the complainant's $2,500 by trick. In 8A Words and Phrases, p 79, we find a "confidence game" described:

"The 'confidence game' is any swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler, and is very often practiced by the use of cards, dice, checks, or other means, instruments, or devices, in which the victim gets nothing, but is simply swindled out of his money by some trick or device. *Juretich v People,* 223 Ill 484, 486; 79 NE 181, 182 (1906), citing *Du Bois v People,* 200 Ill 157; 65 NE 658; 93 Am St Rep 183 (1902); *Graham v People,* 181 Ill 477; 55 NE 179; 47 LRA 731 (1899); *Maxwell v People,* 158 Ill 248; 41 NE 995 (1895)."

In the case of *People v Martin,* 116 Mich 446, 451–452; 74 NW 653, 655 (1898), it is stated:

"The case of *People v Shaw,* 57 Mich 403; 24 NW 121 (1885), is an instructive one. Shaw and Jones were confederates. Shaw claimed to be an agent for a tea house, and explained the method of selling tea by means of cards. While he was doing this, Jones came up, and pretended to be a stranger, and took part in the transaction, which resulted in Brown letting Shaw have $80, which Shaw bet with Jones. The card was drawn, and Shaw lost, and he at once delivered the money to Jones. Justice CAMPBELL, in writing the opinion, made use of the following language: 'There is some rather attenuated discrimination to be found in the books between such cheats as induce a person to give temporary custody of his property to another, who keeps or disposes of it, and those whereby he is induced to part with it out and out. We do not think it profitable to draw overnice metaphysical distinctions to save thieves from punishment. If rogues conspire to get away a man's money by such tricks as those which were played here, it is not going beyond the settled rules of law to

hold that the fraud will supply the place of trespass in the taking, and so make the conversion felonious;' and sustained the conviction of respondents for larceny."

Defendant asserts that inasmuch as the complainant intended to participate in the game of chance and intended to part with the possession and title of the money so bet, it could not be larceny by trick but would be "obtaining money by false pretenses".[1] *People v Niver,* 7 Mich App 652; 152 NW2d 714 (1967). This position is without strength because the law in Michigan forbids the gambling of money on games of chance with certain exceptions not pertinent hereto. The money won in such a game does not pass title to the winner because it is the result of an illegal act. MCLA 750.301; MSA 28.533; MCLA 750.314; MSA 28.546. Therefore, even under defendant's theory of the law, under the facts in this case complainant could not have been deemed to have intended to part with the title to the money lost in the card game for under the law she would be entitled to the return of the money. MCLA 600.2939; MSA 27A.2939.

Of course, we are considering an *attempt* to commit larceny by trick, not larceny by trick. There were adequate facts shown to justify the trial court's accepting the plea of guilty to the charge of attempting to commit larceny by trick.

Defendant claims that the trial court did not have jurisdiction of the case because the offense took place in Hamtramck and not the City of Detroit. We disagree. A part of the transaction

---

[1] MCLA 750.218; MSA 28.415 and punishable by a maximum sentence of ten years in prison. An *attempt* would be punishable by a maximum sentence of five years in prison. Also, the account by the complainant of how she was relieved of her $2,500 showed only an avowed intent on her part to give defendant the temporary possession of the money.

took place in the City of Detroit, *i.e.,* the cashing of the bank money order for $1,250 at the bank in the City of Detroit as urged by the defendant and his accomplice, Mr. Lewis. This sum was a part of the subject money the object of the larceny by trick practiced by the defendant and his accomplice upon the complainant. *People v Lee,* 334 Mich 217; 54 NW2d 305 (1952); MCLA 762.8; MSA 28.851.

Defendant is correct in his claim that the minimum sentence of two years was contrary to the ruling made in the case of *People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972), limiting the minimum sentence to not more than 2/3 of the maximum sentence where an indeterminate sentence is given. We therefore modify the sentence to 1-2/3 to 2-1/2 years.

Affirmed, as modified.

All concurred.