STATE of Maine

v.

Joel BOWMAN.

Supreme Judicial Court of Maine.

Argued Jan. 30, 1991.

Decided March 21, 1991.

Charles K. Leadbettor (orally), Garry L. Greene, Asst. Attys. Gen., Augusta, for appellant.

James W. Strong (orally), Strout, Payson, Pellicani, Hokkanen, Strong & Levine, Rockland, for appellee.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD, and COLLINS, JJ.

WATHEN, Justice.

Defendant Joel Bowman appeals his conviction of murder (17–A M.R.S.A. § 201(1)(A) (1983)) following a jury trial in the Superior Court (Penobscot County, *Brody, C.J.*). Defendant makes four arguments on appeal: (1) the Superior Court erred in refusing to allow counsel to conduct the voir dire examination of prospective jurors; (2) the change of venue made to accommodate a joint trial of co-defendants was unconstitutional and violated M.R.Crim.P. 21(b)(2); (3) the Superior Court improperly instructed the jury on accomplice liability as it relates to manslaughter; and (4) the Superior Court erred in ordering a dual-trial four-jury procedure in the prosecution of defendant and his three co-defendants. We affirm the judgment of the Superior Court.

The relevant facts may be summarized as follows: In the late afternoon of January 1, 1989, defendant, along with co-defendants Gerald Rolerson, David Turner, and Charles Novisky, drove to several friends' houses and obtained a shotgun and shells. David Turner's brother overheard them discussing whether Randall Lind, the murder victim, was a "narc." Somewhat later, Lind joined the group in the car, and defendant and Rolerson began arguing with Lind about being a "narc." The car stopped on the North Union Road in Washington, and, according to Turner, defendant shot Lind in the back of the head. After the shooting, Rolerson stopped at the Appleton home he shared with Ella Reynolds. He told Ella that he was leaving because of an accident involving the person who had been "causing all the trouble," and that the four co-defendants would be "sticking together." Later, the four arrived at the Portland home of Turner's sister. Rolerson told her that they had shot someone in the back of the head with a shotgun.

Defendant and his three co-defendants were arrested in Maryland and were returned to Maine and charged with intentional or knowing murder in violation of 17–A M.R.S.A. § 201(1)(A) and conspiracy to commit murder in violation of 17–A M.R.S.A. § 151(1) & (4) (1983). The Superior Court (Knox County, *Chandler, J.*) transferred venue to Penobscot County and ordered that the four co-defendants be tried concurrently with separate juries. It also ordered that voir dire be conducted by the court using its own questions and questions submitted in writing by counsel. Following the court's voir dire, counsel were to be given an opportunity to suggest additional questions and to request that some jurors be questioned individually if cause for such individual questioning were shown. Pursuant to the order, one judge was to preside over the trial of defendants Bowman and Rolerson while another was to preside over the trials of defendants Novisky and Turner. Before trial, the State dismissed the indictment for conspiracy, and co-defendant David Turner pleaded guilty to manslaughter. He later testified for the State at defendant's trial. Following the dual-jury trial, defendant was convicted of murder and now appeals.

*Voir Dire*

■ Defendant argues, for the first time on appeal, that the Superior Court abused its discretion in denying defense counsel the right to conduct the voir dire of prospective jurors. He bases this argument on 15 M.R.S.A. § 1258–A (1980) which states: "Any rule of court or statute to the contrary notwithstanding, the court shall permit voir dire examination to be conducted by the parties or their attorneys under its direction."

"The purpose of the voir dire examination is to detect bias and prejudice in prospective jurors, thus ensuring that a defendant will be tried by as fair and impartial a jury as possible." *State v. Lovely,* 451 A.2d 900, 901 (Me.1982). We have "repeatedly recognized the considerable discretion over the conduct of juror *voir dire* vested in the presiding justice." *State v. Waterhouse,* 513 A.2d 862, 863 (Me.1986). Furthermore, we have stated on several occasions that it is within the Superior Court's discretion to conduct the voir dire of prospective jurors on its own without providing an opportunity for counsel to question individual jurors themselves. *See State v. Woodburn,* 559 A.2d 343, 344 (Me. 1989); *State v. Lambert,* 528 A.2d 890, 892 (Me.1987); *State v. Bernier,* 486 A.2d 147, 150 (Me.1985); *State v. Durost,* 497 A.2d 134, 136–37 (Me.1985); *State v. Lovely,* 451 A.2d at 901.

In exercising its considerable discretion, the Superior Court must make "an informed judgment" about the conduct of voir dire "based upon a foundation of law and reason." *Id.* It is the court's "responsibility to balance the competing considerations of fairness to the defendant, judicial economy, and avoidance of embarrassment to potential jurors." *State v. Moody,* 486 A.2d 122, 125 (Me.1984). While in the present case, the Superior Court conducted the initial voir dire examination, defense counsel was given the opportunity to submit questions and to conduct some individual voir dire of prospective jurors himself. Here, as in *State v. Bernier,* the Superior Court "incorporated in his own examination virtually all of the questions proposed by the Defendant's counsel.... He then chose to ask counsel for both parties whether they had any additional questions...." *State v. Bernier,* 486 A.2d at 150. Thus, contrary to defendant's contention, the Superior Court did not violate 15 M.R.S.A. § 1258–A. Although the court did conduct the initial voir dire, it also permitted defendant's counsel to submit questions and to conduct additional voir dire "under its direction." We find no error, much less any obvious error.

*Change of venue*

■ Citing article I, section 6 of the Maine constitution, the sixth amendment of the United States Constitution, and 15 M.R. S.A. § 1 (1980 and Supp.1990), defendant argues that the change of venue ordered by the Superior Court to accommodate the dual-trial four-jury procedure violated his constitutional and statutory rights.

Article I, section 6 of the Maine constitution guarantees the right to a trial "by a jury of the vicinity." This guarantee does not require, however, that a defendant be tried in the county where the offense was committed. *See State v. Baldwin,* 305 A.2d 555, 559 (Me.1973). Rather, it means something far less restrictive. We have previously recognized the "common, ordinary meaning" of the word vicinity, as "that which is near, not remote." *State v. Longley,* 119 Me. 535, 539, 112 A. 260, 262 (1921). Applying this definition, it is clear that Penobscot County is "in the vicinity" of the Town of Washington, where the crime was committed, and the Superior Court did not violate the Maine constitution in transferring the trial there.

■ The provision in the sixth amendment to the United States Constitution, requiring that an accused be provided with "an impartial jury of the State and district wherein the crime shall have been committed," has no application to a state criminal prosecution for an offense committed within that state's boundaries. As the Supreme Court of Iowa has noted, "The United States Supreme Court has not, to our knowledge, at this time made this clause of the Sixth Amendment applicable to state trials.... [T]he established general rule [is] that [this] constitutional provision applies only to prosecutions in federal courts." *State v. Byrnes,* 260 Iowa 765, 769, 150 N.W.2d 280, 282 (1967); *see also Burton v. United States,* 202 U.S. 344, 381, 26 S.Ct. 688, 699, 50 L.Ed. 1057 (1906); *People v. Lee,* 334 Mich. 217, 224, 54 N.W.2d 305, 308 (1952). Thus, defendant can find no support for his contention in the United States Constitution.

■ 15 M.R.S.A. § 1 states that "[t]he Supreme Judicial Court may by rule pro-

vide that, with the consent of the defendant, post-arraignment proceedings in criminal cases may be conducted at locations other than those provided by statute." Pursuant to that statute, the Supreme Judicial Court promulgated M.R.Crim.P. 21(b)(2) which provides: "With the consent of the defendant and the attorney for the state the court may transfer a proceeding to another county or division." In its pretrial order as to location and manner of trial, the Superior Court stated that defendant had no objection to a change in location from Knox County, and no objection appears in the record. Having obtained the necessary consent of the parties and determined that the courthouse in Penobscot County could more easily accommodate the joint trial, the Superior Court was well within its discretion to change the trial's venue. *See State v. Pritchett*, 302 A.2d 101, 103 (Me.1973).

*Accomplice liability as it relates to manslaughter*

▆▆▆ Defendant argues that the Superior Court "erred in [its] instruction concerning accomplice liability as it relates to manslaughter and thereby tended to confuse the jury as to its options." Over defendant's objection, the Superior Court gave the following instruction on accomplice liability as it relates to manslaughter:

> To prove the defendant guilty of accomplice liability to reckless or criminally negligent manslaughter of Randall Lind, the State must convince you beyond a reasonable doubt of four elements: First, that one of the co-defendants recklessly or with criminal negligence caused the death of Randall Lind. Second, that the defendant either solicited a co-defendant to engage in *criminal conduct* which resulted in the reckless or criminally negligent killing of Randall Lind, or aided or agreed to aid or attempted to aid the co-defendant in planning or engaging in conduct which resulted in the reckless or criminally negligent killing of Randall Lind. Third, that at the time the defendant allegedly solicited or helped the co-defendant engage in this *criminal conduct,* the defendant intended to promote or facilitate *criminal conduct* which resulted in the reckless or criminally negligent killing of Randall Lind. Fourth, that the commission of a reckless or criminally negligent killing of Randall Lind by a co-defendant was a reasonably foreseeable consequence of the defendant's own conduct.

(emphasis added). This instruction reflects the Superior Court's decision not "to instruct [the jury] with respect to any other specific [primary] crimes such as criminal threatening with a dangerous weapon or assault or aggravated assault with a weapon and the like," preferring to refer to the generic "criminal conduct" in the instruction.

"The language of [17–A M.R.S.A. § 57] explicitly and amply defines the current law applicable to accomplice liability and provides a framework for jury instructions...." *State v. Ayers*, 433 A.2d 356, 364 (Me.1981). 17–A M.R.S.A. § 57(3)(A) (1983) states:

> 3. A person is an accomplice of another person in the commission of a crime if:
>
> A. With the intent of promoting or facilitating the commission of the crime, he solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of his conduct.

We construed Section 57(3)(A) in *State v. Linscott*, 520 A.2d 1067 (Me.1987), stating as follows: "Under the first sentence of that section, which is to be read independently of the second sentence,

> liability for a "primary crime" ... [here, the generic "criminal conduct"] is established by proof that the actor intended to promote or facilitate that crime. Under the second sentence, liability for any "secondary crime" ... [here, murder] that may have been committed by the principal is established upon a twofold showing: (a) that the actor intended to promote the *primary crime,* and (b) that

the commission of the secondary crime was a "foreseeable consequence" of the actor's participation in the primary crime."

*Id.* at 1069 (quoting *State v. Goodall,* 407 A.2d 268, 277–78 (Me.1979)). We have consistently upheld this interpretation of Section 57(3)(A). *See State v. Linscott,* 520 A.2d at 1069–70; *State v. Armstrong,* 503 A.2d 701, 703 (Me.1986); *State v. Johnson,* 434 A.2d 532, 538 (Me.1981); *State v. Kimball,* 424 A.2d 684, 693 (Me.1981); *State v. Anderson,* 409 A.2d 1290, 1303 (Me.1979).

In the present case, the Superior Court erred in its instruction on accomplice liability by not specifying a primary crime or its elements. Without such instruction, the jury would be unable to determine whether defendant intended to promote or facilitate such a crime of which manslaughter was a reasonably foreseeable consequence. The error was not prejudicial, however, because the jury's verdict of guilty of murder rendered any error in the instructions on manslaughter harmless. The Superior Court instructed the jury to decide, first, whether the State had proven beyond a reasonable doubt all of the elements of defendant's liability for murder as a principal or an accomplice before considering whether defendant was guilty of manslaughter. Furthermore, the jury was directed not to answer the question regarding the manslaughter charge on the verdict form unless they found defendant not guilty of murder. We have recognized that an error in instructions pertaining to a particular charge is rendered harmless where the jury returns a verdict of guilty to a different or alternative charge. *See State v. Pullen,* 266 A.2d 222, 229 (Me.1970). Thus, even though the court improperly instructed the jury on accomplice liability as it relates to manslaughter, given the court's instructions concerning the sequence of deliberations, "it is 'highly probable that the error did not affect the judgment.'" *State v. Goodridge,* 556 A.2d 211, 212 (Me.1989)

(quoting *State v. Huff,* 469 A.2d 1251, 1253–54 (Me.1984)). Accordingly, the error is harmless.

*Dual-trial four-jury procedure*

■ Defendant argues that the Superior Court committed reversible error in ordering the dual-trial four-jury procedure for two reasons: (1) it resulted in inadequate representation of counsel; and (2) there is no statutory authorization for the procedure.

"We have repeatedly held that the issue of inadequate representation 'normally cannot be raised on direct appeal but, rather, must await post-conviction proceedings.'" *State v. Barrett,* 577 A.2d 1167, 1172 (Me. 1990) (quoting *State v. Gilcott,* 420 A.2d 1238, 1240 (Me.1980)). The only exception to this rule is where the record clearly establishes representational difficulties that are beyond the possibility of explanation, justification, or rational disagreement. *See State v. Barrett,* 577 A.2d at 1172; *State v. Attanasio,* 577 A.2d 344, 345 (Me. 1990). Because the record in this case does not establish such representational difficulties, defendant's claim of ineffective assistance of counsel cannot properly be considered on this direct appeal.

■ Defendant argues that the Superior Court lacked the authority to order the dual-trial four-jury procedure. Asserting that the Superior Court's adoption of this procedure represented "an addition to, amendment to or modification of the existing Rules of Criminal Procedure," defendant contends that such authority is vested exclusively with the Supreme Judicial Court, pursuant to 4 M.R.S.A. § 9 (1989).[1] M.R.Crim.P. 1(c), however, provides that "the [Superior Court] shall proceed in any lawful manner not inconsistent with the Constitution of the United States or of the State of Maine, these rules or any applicable statutes" when no procedure is specifically prescribed. Furthermore, joint trials have been specifically provided for in M.R.

---

**1.** 4 M.R.S.A. § 9 provides in pertinent part:

The Supreme Judicial Court shall have the power and authority to prescribe, repeal, add to, amend or modify rules of pleading, practice and procedure with respect to any and all

proceedings through final judgment, review and post-conviction remedy in criminal cases before justices of the peace, District Courts, Superior Courts and the Supreme Judicial Court.

Crim.P. 8(c) and " 'generally favored in the interest of conserving judicial resources, avoiding duplicative trials, minimizing the public expenditure of funds and promptly bringing the accused to trial.' " *State v. Creeger,* 576 A.2d 757, 759 (Me.1990) (quoting *State v. Anderson,* 409 A.2d 1290, 1297 (Me.1979)).

M.R.Crim.P. 8(d) authorizes the court to "provide whatever ... relief justice requires" if it appears that a defendant is prejudiced by a joint trial. In this case, the joint trial was ordered to further judicial economy and to prevent prejudice to any co-defendant "who was not the first to be tried if separate, non-concurrent trials were undertaken." In an attempt to foreclose any potential *Bruton* problems or prejudice resulting from the joint trial itself, the Superior Court ordered separate juries for each co-defendant. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *State v. Bleyl,* 435 A.2d 1349, 1362 (Me.1981). The United States Supreme Court held in *Bruton* that the admission of a co-defendant's confession in a joint trial, where the confessor chooses not to testify, violates a co-defendant's "right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Bruton v. United States,* 391 U.S. at 126, 88 S.Ct. at 1622. Only by providing separate juries for each co-defendant could the Superior Court protect them from the prejudice inherent in a joint trial with potential *Bruton* problems. This, then, was the "relief justice required" that the Superior Court provided to defendant in ordering the dual-trial four-jury procedure pursuant to M.R.Crim.P. 8(c) and 8(d). Because the procedure is not unlawful or inconsistent with state or federal constitutions, the Maine Rules of Criminal Procedure, or any applicable statutes, the Superior Court was authorized by M.R.Crim.P. 1(c) to order it in the absence of any other specifically prescribed procedure.

Defendant, however, contends that the dual-trial four-jury procedure is so dramatic a departure from established practice "that its implementation must be regarded as justifiable only upon the prior approval of the Supreme Judicial Court." While we have cautioned against extending M.R. Crim.P. 1(c) to encompass " 'radical, uncommon or unapproved techniques,' " we concluded in *State v. Armstrong* that the bifurcated trial procedure, while novel to the state, was neither radical, uncommon, nor unapproved. *State v. Armstrong,* 344 A.2d 42, 54 (Me.1975) (quoting *State v. Nichols,* 325 A.2d 28, 33 (Me.1974)).

Although the dual-jury trial procedure has not been widely endorsed or encouraged, "no court, State or Federal, has held the procedure to be inherently prejudicial, nor has any court to date found specific prejudice warranting reversal in the matter before it." *People v. Ricardo B.,* 130 A.D.2d 213, 218–19, 518 N.Y.S.2d 843, 847 (1987). Rejecting defendant's arguments as "sheer speculation" that the dual-trial procedure was necessarily prejudicial; cumbersome, inconvenient, and frustrating for jurors; and tending to invite jury speculation, the Supreme Court of California concluded that "the use of dual juries is a permissible practice. The procedure is not a basis for reversal on appeal in the absence of identifiable prejudice resulting from the manner in which it is implemented." *People v. Harris,* 47 Cal.3d 1047, 1071–72, 1075, 255 Cal.Rptr. 352, 366–67, 369, 767 P.2d 619, 633–34, 636 (1989) (en banc).

Numerous state and federal courts have reviewed cases involving the dual-jury procedure, all of which have upheld the convictions from which defendants appealed, finding no prejudice inherent in the procedure. Generally, federal courts have viewed the procedure more favorably than state courts.[2] *See, e.g., United States v. Lebron–Gonzalez,* 816 F.2d 823, 830–31 (1st Cir.1987) (citing cases); *United States v.*

---

**2.** Unlike some state courts, federal courts are empowered by F.R.Crim.P. 57(b) to "proceed in any lawful manner not inconsistent with these rules or with any applicable statute." It is significant to note that M.R.Crim.P. 1(c) similarly empowers the Superior Court to "proceed in any lawful manner not inconsistent with the Constitution of the United States or of the State of Maine, these rules or any applicable statutes."

*Hayes,* 676 F.2d 1359, 1366–67 (11th Cir. 1982), *cert. denied* 459 U.S. 1040, 103 S.Ct. 455, 74 L.Ed.2d 608 (1982); *United States v. Rimar,* 558 F.2d 1271 (6th Cir.1977), *cert. denied sub nom. Rimar v. United States,* 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978); *United States v. Rowan,* 518 F.2d 685, 689–90 (6th Cir.1975), *cert. denied sub nom. Jackson v. United States,* 423 U.S. 949, 96 S.Ct. 368, 46 L.Ed.2d 284 (1975); *United States v. Sidman,* 470 F.2d 1158 (9th Cir.1972), *cert. denied* 409 U.S. 1127, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973); *State v. Lambright,* 138 Ariz. 63, 70, 673 P.2d 1, 8 (1983) ("We join the overwhelming authority ... and find that the [dual-jury] procedure is not inherently prejudicial."); *People v. Church,* 102 Ill.App.3d 155, 163–65, 57 Ill.Dec. 679, 686–87, 429 N.E.2d 577, 584–85 (1981) (Statutory authority for the procedure exists in Illinois statute that allows the court to "provide any other relief as justice may require.... Absent a showing of prejudice, the reviewing court should not speculate as to any impropriety in the procedure."); *State v. Corsi,* 86 N.J. 172, 179, 430 A.2d 210, 213 (1981) (Judgments of conviction affirmed because no reversible error occurred.).

Thus, the use of a dual-jury procedure is authorized under the Maine Rules of Criminal Procedure. It does not violate any statutory or constitutional provision; nor is it such a radical departure from established procedure that its use requires prior approval from this court. We conclude that the procedure is not inherently prejudicial and, absent a specific showing of prejudice in the record, provides no basis for disturbing the judgment on direct appeal.

The entry is:

Judgment affirmed.

All concurring.