WELCH, Judge,
concurring in part and dissenting in part.
The majority affirms Emmett Grady Wallace’s convictions for chemical endangerment of a child, § 26-15-3.2(a), Ala. Code 1975, and first-degree unlawful manufacture of a controlled substance, § 13A-12-218, Ala.Code 1975. I concur with the majority’s affirmance of the chemical-endangerment conviction. I disagree with the majority’s resolution of Wallace’s challenge to the unlawful-manufacture convic *223 tion and respectfully dissent as to the portions of the opinion discussing the two issues related to that conviction.
Wallace argues that the trial court erred when it denied the motion for a judgment of acquittal as to the unlawful-manufacture charge that he made at the conclusion of the State’s case because, he says, the State did not present scientific evidence to establish either that the substance he manufactured was methamphetamine or that he possessed any chemical precursors as defined in § 20-2-181, Ala.Code 1975.
It appears that the majority holds that the State proved beyond a reasonable doubt that Wallace was guilty of the unlawful manufacture of a controlled substance, and appears to hold that the State established a prima facie case as to both alternatives of the charge — that Wallace actually manufactured methamphetamine and that he possessed a precursor chemical. The evidence presented by the State supports neither alternative.
Of course, the majority has correctly stated that, in reviewing a trial court’s denial of a motion for a judgment of acquittal, this Court must consider the evidence in the light most favorable to the State and must determine whether, at the time the motion was made, there was sufficient evidence before the jury from which the jury could by fair inference have found the defendant guilty. I agree with the majority’s statement that “Alabama has never required direct proof that a substance is a controlled substance to sustain a drug conviction.” 130 So.3d at 218. I do not disagree with the majority’s implicit holding that the prosecution is not required in all cases to present evidence based on scientific testing and analysis to identify a controlled substance. However, all those propositions, combined with the principle that circumstantial evidence is entitled to the same weight as direct evidence so long as it points unequivocally to the defendant’s guilt, are not enough to uphold the trial court’s denial of Wallace’s motion for a judgment of acquittal in this case.
Wallace was charged with knowingly manufacturing a controlled substance— methamphetamine — and/or possessing a precursor substance as defined in § 20-2-181, Ala.Code 1975, with the intent to unlawfully manufacture a controlled substance.
Section 13A-12-218 provides, in relevant part:
“(a) A person commits the crime of unlawful manufacture of a controlled substance in the first degree if he or she violates Section 13A-12-217 and two or more of the following conditions occurred in conjunction with that violation:
[[Image here]]
“(4) A clandestine laboratory operation was to take place or did take place within 500 feet of a residence, place of business, church, or school.
[[Image here]]
“(6) A clandestine laboratory operation was for the production of controlled substances listed in Schedule I or Schedule II.
“(7) A person under the age of 17 was present during the manufacturing process.”
Section 13A-12-217, Ala.Code 1975, provides, in relevant part:
“(a) A person commits the crime of unlawful manufacture of a controlled substance in the second degree if, except as otherwise authorized in state or federal law, he or she does any of the following:
“(1) Manufactures a controlled substance enumerated in Schedules I to V, inclusive.
*224 “(2) Possesses precursor substances as determined in Section 20-2-181, in any amount with the intent to unlawfully manufacture a controlled substance.”
A. .Manufacture of Methamphetamine
The majority states: “Detective Schlem-mer testified that the plastic bottle and its components were consistent with the materials needed to build a meth lab and that the chemical smell emanating from the bottle was consistent with the presence of meth.” 130 So.3d at 220. I agree with the majority. The State established that Wallace had the components for a one-pot methamphetamine lab. The State further established that the liquid at the top of the plastic bottle had a red tint, indicating the possible presence of pseudoephedrine, which the State acknowledged was a necessary ingredient of methamphetamine. Finally, the State established that E.T. had on prior occasions seen Wallace put pills in the bottle and that he had smoked what he made in the bottle. However, the State presented no evidence to prove that the substance in the seized plastic bottle was, in fact, methamphetamine or that completed methamphetamine had been produced by Wallace. Rather, Det. Schlemmer explained part of the manufacturing process, testified that the layered liquid in the plastic bottle indicated that an intermediate step in the process had not been completed and that two additional steps were required — filtration to extract methamphetamine oil and application of gas to the oil to crystalize it, but that “it hadn’t made it to that process yet.” (R. 283.) The substance in the Mason jar was tested by the clean-up crew, but there was no testimony about the result of that test and certainly no testimony that the test revealed the presence of methamphetamine.
At most, the State proved that Wallace was attempting to make methamphetamine, but the State’s own witness established that Wallace had not completed the process. Rather, the State hoped that the jury would fill in the gaps in the evidence, that it would overlook the State’s failure to provide even circumstantial evidence that Wallace had actually manufactured methamphetamine, and that it would find Wallace guilty of manufacturing a drug without any evidence that the drug was ever actually produced. A reasonable jury could not have concluded beyond a reasonable doubt that Wallace was guilty of completed crime of the unlawful manufacture of methamphetamine, and I dissent from the majority’s holding to the contrary.
However, Alabama specifically criminalizes the attempt to commit a controlled-substance crime.
“Section 13A-12-203(a), Ala.Code 1975, provides that ‘[a] person is guilty of an attempt to commit a controlled substance crime if he engages in the conduct defined in § 13A-4-2(a), and the crime attempted is a controlled substance crime.’ See also Rhodes v. State, 686 So.2d 1288, 1289 (Ala.Cr.App.1996); Norris v. State, 601 So.2d 1105 (Ala.Cr.App.1991). Section 13A-4-2(a), Ala. Code 1975, provides that ‘[a] person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense.’ ”
Davis v. State, 747 So.2d 921, 922 (Ala.Crim.App.1999).
Here, the State established that Wallace was in an intermediate phase in the process of manufacturing methamphetamine. When the police arrived, a chemical reaction consistent with manufacturing methamphetamine was taking place in a container commonly used to manufacture methamphetamine. But for proof of the *225 presence of ephedrine or pseudoephedrine, Wallace had the necessary components to complete the manufacture of methamphetamine. These facts are sufficient to constitute overt acts toward the commission of manufacturing methamphetamine.
Because the jury was charged on the offense of the attempted manufacture of a controlled substance, this case should be remanded to the trial court with instructions for that court to enter a judgment of guilty of the lesser-included offense of attempted manufacture of a controlled substance and to impose a sentence for that offense. See Brand v. State, 960 So.2d 748 (Ala.Crim.App.2006) (holding that appellate courts have the authority to reverse a conviction and order an entry of judgment on a lesser-included offense).
Based on the foregoing, the trial court erred when it denied Wallace’s motion for a judgment of acquittal as to the first alternative of the unlawful-manufacture count.
B. Possession of Precursor Chemicals
The majority holds that the State proved the second alternative of the unlawful-manufacture charge — that Wallace was in possession of a precursor substance and that he had the intent to manufacture methamphetamine. I disagree.
1. Evidentiary Insufficiency
The State did not proffer any evidence indicating that Wallace was in possession of any precursor substances, as defined in § 20-2-181(d), Ala.Code 1975, which evidence was required to prove the alternative charge that Wallace possessed precursor substances with intent to unlawfully manufacture methamphetamine.
Section 20 — 2—181 (d), Ala.Code 1975, addresses precursor chemicals and states:
“Until the Board of Pharmacy adopts a rule designating listed precursor chemicals, as required by subsection (a), the following chemicals or substances are hereby deemed listed precursor chemicals:
“(1) Acetic anhydride;
“(2) Anthranilic acid and its salts;
“(3) Benzyl cyanide;
“(4) Ephedrine, its salts, optical isomers, and salts of optical isomers;
“(5) Ergonovine and its salts;
“(6) Ergotamine and its salts;
“(7) Hydriodic acid;
“(8) Isosafrol;
“(9) Methylamine;
“(10) N-Acetylanthranilic acid and its salts;
“(11) Norpseudoephedrine, its salts, optical isomers, and salts of optical isomers;
“(12) Phenylacetic acid and its salts;
“(13) Phenylpropanolamine, its salts, optical isomers, and salts of optical isomers;
“(14) Piperidine and its salts;
“(15) Pseudoephedrine, its salts, optical isomers, and salts of optical isomers;
“(16) Safrole; and
“(17) 3,4-Methylenedioxyphenyl-2-propanone.”
Although the State presented testimony that Wallace had in his possession various components that were used in the methamphetamine-manufacturing process, such as camp fuel, rubber hosing, coffee filters, rags, and a box of salt, none of those items are precursor chemicals as defined in the statute, and no witness testified otherwise. The only evidence that might have suggested that a precursor chemical was present was E.T.’s statement that she had previously seen Wallace put pills in the plastic bottle. However, reference to a *226 handful of pills at some prior time was insufficient proof that at the time of his arrest Wallace possessed pseudoephedrine or any other precursor chemical listed in the statute. Det. Schlemmer testified that the red tint to the liquid in the bottle was consistent with Sudafed brand decongestant. No doubt there are numerous red pills and other substances that Wallace could have placed in the bottle and that could have resulted in the red-tinted liquid found in the bottle at the time of Wallace’s arrest. The State presented no packaging, receipts of purchase, or any other evidence that would have allowed the jury to conclude that Wallace placed any necessary precursor, including pseudoephedrine or Sudafed, into the bottle. As Wallace argued at trial, the fact that Sudafed was a red pill and that the water was tinted red did not constitute sufficient proof that the water in the bottle was red because he had placed Sudafed in it.
The State provided an incomplete chain of facts and resorted to speculation and conjecture in an attempt to prove that Wallace had, in fact, placed pseudoephed-rine, which the State’s expert witness testified was a necessary ingredient in the manufacturing process of methamphetamine, inside the plastic bottle. A jury is not permitted to conclude that a defendant is guilty beyond a reasonable doubt based on inferences that are unsupported by evidence. The State’s incomplete chain of facts in this case required the jury to rely on such unsupported inferences and speculation. The State’s evidence, when viewed in the light most favorable to the State, was not sufficient for a jury to reasonably find that the evidence excluded every reasonable hypothesis except that of guilt. See Lockhart v. State, 715 So.2d 895, 899 (Ala.Crim.App.1997), quoting Ward v. State, 610 So.2d 1190, 1191 (Ala.Crim.App.1992). The State failed to present any evidence that would allow the jury to find, beyond a reasonable doubt, that Wallace possessed precursor chemicals with the intent to manufacture methamphetamine. Therefore, a verdict based on § 13A-12-217(a)(2) could not be upheld, and the trial court erred when it denied Wallace’s motion for a judgment of acquittal as to this alternative of the unlawful-manufacture charge.
2. Jury Instruction
I would hold that the trial court erred when it denied Wallace’s motion for a judgment of acquittal as to the alternative charge in the indictment of possession of precursor chemicals with the intent to manufacture methamphetamine, thus rendering moot Wallace’s argument in Issue III of his brief — that the trial court erred when it refused to instruct the jury, based on § 20-2-181(d), Ala.Code 1975, as to the substances that were defined by the statute as precursors. However, I address this issue here because the majority appears to hold in Part I of its opinion that the State established a prima facie case of the possession of precursor chemicals with the intent to manufacture and then holds in Part III of its opinion that the trial court did not err when it refused to give the statutory definition of precursor chemicals contained in § 20-2-181, Ala.Code 1975.
I disagree with the majority’s analysis and holding.
The indictment charged Wallace with possessing “precursor substances, in any amount, with the intent to unlawfully manufacture a controlled substance, as determined in Section 20-2-181 of the Code of Alabama 1975,” but the indictment did not list any specific precursor chemical. In order to find him guilty under this count, the prosecution had to prove that he was in possession of a precursor listed in the *227 statute. Testimony about the presence of various components that could be used in the methamphetamine-manufacturing process, such as camp fuel, rubber hosing, coffee filters, rags, and a box-of salt, was not the same as proof of the presence of a precursor chemical. None of those items are precursor chemicals as defined in the statute, and no witness testified otherwise. Det. Schlemmer implied that Wallace had used Sudafed to make methamphetamine, but the detective was unable to testify to that fact, and there was no other testimony that would have permitted the jury to make that finding, nor was there any testimony about any other chemical that would have been classified as a precursor under § 20-2-181.
During the jury-charge conference Wallace asked the trial court to instruct the jury on what constitutes precursor chemicals by reading the list of substances in § 20-2-181. When the State objected to Wallace’s request, Wallace’s attorney asked, “How are they supposed to decide? How are they supposed to decide if this man possessed precursor chemicals if we do not define what precursor chemicals are?” (R. 310.) He also stated, “I don’t see how we can send a jury back there and ask them to determine whether or not this man possessed precursors if we don’t give them what precursors are.” (R. 311.)
As the majority states, a trial court has broad discretion in formulating its jury charge, so long as the charge accurately reflects the facts and the law of the case. 130 So.3d at 221 If the trial court refuses to give a requested jury instruction, no error results if the substance of the charge is covered in the trial court’s charge to the jury. E.g., Weeks v. State, 611 So.2d 1156, 1158 (Ala.Crim.App.1992).
The trial judge here did not adequately charge the jury on the law of the case, and it abused its discretion when it denied Wallace’s request that it list the precursor substances in § 20-2-181, Ala.Code 1975.
The majority states that because the jury was presented with alternative ways of proving- first-degree manufacturing a controlled substance — i.e., by manufacturing methamphetamine and/or possessing precursor chemicals with intent to manufacture a controlled substance — any error in not charging -the jury with the definition of “precursor chemicals” was harmless. Citing State v. Bowman, 588 A.2d 728, 732 (Me.1991), the majority states that “ ‘an error in instructions pertaining to a particular charge is rendered harmless where the jury returns a verdict of guilty to a different or alternative charge.’” 130 So.3d 212, quoting Bowman, 588 A.2d at 732. I do not believe that Bowman supports the majority’s contention. Bowman addressed alternate charges; Wallace’s case concerns alternate proof. Bowman was charged with murder. The issue was whether the jury was properly charged on manslaughter. Although it was determined that the manslaughter charge was erroneous, the Bowman court found that the trial court had instructed the jury to first decide whether Bowman was guilty of murder before deciding his culpability for manslaughter. The jury found Bowman guilty of murder; thus, that court held that the error regarding the manslaughter instruction was harmless because the jury did not consider the manslaughter charge. In Deutcsh v. State, 610 So.2d 1212 (Ala.Crim.App.1992), also cited by the majority, the jury was given an erroneous instruction on tampering with governmental records as charged in § 13A-10-12(a)(2), Ala.Code 1975.’ This Court held that the error was harmless because Deutcsh was convicted of tampering with governmental records as charged in § 13A-10-12(a)(l), Ala.Code 1975. Unlike Bowman and Deutcsh, Wallace was not convicted of an alternative offense to the charged offense. Wallace *228 concerns alternative proof to substantiate the offense charged in the indictment. In this case, the jury was instructed that it could find guilt based on manufacturing methamphetamine (a controlled substance in Schedules I to V) or possession of a precursor chemical, or both. I do not believe it was proper to instruct the jury that it could return a guilty verdict based on the possession of a precursor chemical without defining precursor chemical.
“When a term is included in a statute relevant to a case, and that term is not defined by statute, whether it is necessary for the trial court to define the term for the jury hinges on the facts of the case.” Ivery v. State, 686 So.2d 495, 501-02 (Ala.Crim.App.), aff’d on return to remand, 686 So.2d 520 (Ala.Crim.App.1996). The term, “precursor,” is not defined in § 13A-12-217, but that statute refers to § 20-2-181. Section 20-2-181 does not define the term, but it includes a list of chemicals that are considered precursor chemicals.[3] "When it denied Wallace’s request for the jury instruction, the trial court noted that there is no pattern jury instruction defining “precursor,” which is true. That, alone, does not resolve the issue, however. If the term was one that was understood by the average juror in his or her common usage, that would mitigate against the need for a definition. E.g., Thornton v. State, 570 So.2d 762, 772-73 (Ala.Crim.App.1990). “Precursor” is not within the common usage of an average juror, and it is arguably not within the common usage of law-enforcement officers, as Wallace demonstrated in his cross-examination of one of the police officers, who was unable to name even one precursor necessary to the manufacture of methamphetamine. (R. 192, 195.) Without a definition being provided to the jury, it is possible, and perhaps likely, that the jury found that Wallace’s possession of the items such as the tubing and the camp fuel constituted proof that he was in possession of a “precursor substance,” because the State argued that all the components found in the search of the Plum Street residence were used in manufacturing methamphetamine. Certainly the jury was never instructed that, in order to find Wallace guilty under the second alternative for proving second-degree manufacturing of a controlled substance as charged in the indictment, it would have to find beyond a reasonable doubt that Wallace possessed the precursor chemical pseudoephedrine. Without an instruction as to what substances constituted precursors, the jury could not be expected to reach an informed decision about whether Wallace possessed one. The trial court abused its discretion when it refused Wallace’s requested jury instruction. The error was exacerbated by the trial court’s reference in its jury charge to § 20-2-181 and to the fact that the statute delineated precursor substances. (R. 353.) The trial court’s error as to the denial of the jury charge, too, provides a basis for reversal of Wallace’s conviction for the unlawful manufacture of a controlled substance.
Therefore, I concur only with the affir-mance of Wallace’s conviction for the chemical endangerment of a child, as discussed in Part II of the majority opinion. I disagree with the majority’s analysis of the issues related to Wallace’s unlawful-manufacture conviction, and I dissent from the affirmance of that conviction.

. Section 20-2-180(2), Ala.Code 1975, provides: "Listed Precursor Chemical. A chemical substance specifically designated as such by the Alabama State Board of Pharmacy, that, in addition to legitimate uses, is used in the unlawful manufacture of a controlled substance or controlled substances.”