**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Marilyn Kelly          Michael F. Cavanagh
                       Elizabeth A. Weaver
                       Maura D. Corrigan
                       Robert P. Young, Jr.
                       Stephen J. Markman
                       Diane M. Hathaway

FILED JULY 31, 2010

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellant,

v                                                    No. 138959

TOD KEVIN HOUTHOOFD a/k/a TODD
KEVIN HOUTHOOFD,

     Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v                                                    No. 138969

TOD KEVIN HOUTHOOFD a/k/a TODD
KEVIN HOUTHOOFD,

     Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

HATHAWAY, J.

     In this opinion, we address only whether venue was proper in Saginaw County for

defendant's trial on charges of solicitation to commit murder and witness intimidation.

We conclude that venue was not proper for either charge because neither crime was committed in Saginaw County. However, because improper venue is not a constitutional structural error, this matter is subject to a harmless error analysis under MCL 769.26. In this case, defendant was not deprived of his due process right to a fair trial before an impartial jury and there has been no miscarriage of justice. Moreover, MCL 600.1645 explicitly provides that no judgment shall be voided solely on the basis of improper venue. Thus, we reverse the Court of Appeals in part and reinstate defendant's conviction for solicitation to commit murder. In addition, we remand to the Court of Appeals for consideration of whether the trial court failed to articulate substantial and compelling reasons for upwardly departing from the guidelines when imposing defendant's sentences for the solicitation and witness intimidation convictions. With respect to all other issues raised in the applications for leave, we deny leave to appeal.[1]

---

[1] In our order granting leave to appeal, we raised an additional issue for the parties to discuss that the trial court and Court of Appeals did not address. We asked the parties to discuss the significance, if any, of defendant's supposed waiver of objection to the joinder of his cases. *People v Houthoofd*, 485 Mich 858 (2009). The prosecution concedes that defendant did not waive this issue.

The Court of Appeals also did not address defendant's argument that the prosecution violated the rule of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), by failing to provide defendant with the name and report of an undercover officer involved in the investigation of the cases. *Brady* held that a defendant is entitled to the disclosure of exculpatory evidence and no intentional suppression of information by the people or police investigators if the undisclosed material would have caused a different result at trial. The trial court evaluated defendant's argument and held that the information that defendant claimed was not provided to him did not meet the *Brady* criteria. We agree with the trial court and do not address this issue further.

## I. FACTS AND PROCEEDINGS

The facts and proceedings in this case were accurately summarized by the Court of Appeals:

> This case stems from three consolidated, lower court cases involving: obtaining a tractor, tiller, and trailer by false pretenses (LC No. 02-021097-FH); intimidating witness [Michigan State Police] Detective Sergeant Michael VanHorn (LC No. 04-024765-FH); and soliciting Michael Dotson to murder Edward Wurtzel, Jr. (LC No. 05-025865-FH). The cases were consolidated by the trial court and tried together in January and February of 2006.

> In April of 1998, a man identifying himself as Colin Francis called a rental equipment store in Saginaw County. The man indicated that he was interested in renting a tractor and tiller. Wurtzel, a co-owner of the store, spoke to the man over the phone and made arrangements for the rental. Wurtzel testified that a few days later, a man appeared at the store to pick up the tractor and tiller. In order to complete the rental agreement, the man produced a driver's license bearing the name "Colin Francis." The tractor, tiller, and trailer used to haul the equipment were not returned to Wurtzel's store. Wurtzel then discovered that Francis was not the man who had rented the equipment. Francis testified that at the time of the rental, he worked with defendant at a General Motors (GM) plant in Bay City, Michigan and had recently lost his driver's license.

> Detective VanHorn testified that he discovered evidence related to the tractor case in November of 2001. At the time, the detective was investigating a shooting at the home of Jody Meagher. Someone had fired a round of buckshot directly at Meagher and her husband through their window. Meagher informed the investigators, and later testified, that she was a co-worker of defendant's at GM in Bay City, that defendant had been placed on two periods of disciplinary suspension, and that her department was responsible for imposing the suspensions. The shooting occurred during defendant's second suspension. Meagher also indicated that there was a separate, ongoing investigation of defendant involving acts of violence against another GM employee. Defendant had previously worked at a GM plant in Toledo, Ohio. In 1994, GM supervisor Robert Griffith terminated defendant's employment. Shortly thereafter, Griffith was assaulted at his home. Defendant's employment with GM was subsequently reinstated. In 1997, after defendant began working in Bay City, a pipe bomb exploded at Griffith's home.

3

On the night of the shooting at Meagher's home, defendant was arrested for trespassing on GM property. Upon searching defendant's truck for evidence related to the shooting, Detective VanHorn found two driver's licenses belonging to men other than defendant. The licenses bore the names "Colin Francis" and "Dale White." The detective then learned of the "cold" tractor case. While investigating the Griffith case, the Meagher case, and the tractor case, the detective obtained a search warrant for defendant's home and property in Arenac County. Upon executing the warrant, investigators found Wurtzel's tractor and tiller, two pipe bombs, and reading materials entitled, "How to Outfox the Foxes, 297 Secrets the Law and Lawyers Don't Want You to Know," "The Poisoner's Handbook," and "How to Be Your Own Private Detective." The Arenac County prosecutor subsequently charged defendant with receiving and concealing stolen property based on his possession of Wurtzel's equipment and two counts of possessing illegal explosives. Defendant was incarcerated in the Arenac County jail.

In December of 2001, Detective Sergeant Wilbur Yancer of the Saginaw County Sheriff's Department became aware of the developments in the tractor case and arranged for an "in-custody lineup" at the Arenac County jail. At the December 6 lineup, Wurtzel picked defendant out as the man who took his equipment. Later that day, Wurtzel identified defendant's truck. On December 10, the Saginaw County prosecutor charged defendant with obtaining Wurtzel's property by false pretenses. The Arenac County prosecutor subsequently dropped the charges against defendant in favor of Saginaw County proceeding with its false pretenses case. Defendant remained in the Arenac County jail until January of 2002.

During his time in the Arenac County jail, defendant met Dotson, a fellow prisoner. Dotson testified that two or three days after the December 6 lineup, defendant offered him money to shoot out the windows of a Bay City house and to kill Wurtzel at his rental equipment store in Saginaw County. Over the course of several conversations, defendant gave Dotson the details of his plan and a copy of a police report listing Wurtzel's name and business address. Dotson initially agreed to the plan, although he testified that he never intended to carry it out, and told defendant that a man named Chucky could assist with the Bay City shooting.

At some point in December of 2001, or early 2002, Dotson told his girlfriend Sandra Faulman and one of Faulman's relatives about defendant's "murder-for-hire" scheme. In March of 2002, Faulman's relative conveyed the information to Trooper James Moore. Thereafter, Trooper Moore and Detective VanHorn met with Dotson at the Arenac

4

County jail, and Dotson agreed to cooperate with their investigation. Upon searching Faulman's home, the officers recovered the police report listing Wurtzel's name and business address. They then arranged for Detective Sergeant William Eberhardt, posing as Chucky, to make contact with defendant. Investigators also arranged for Dotson to talk to defendant over the phone. During Dotson's recorded phone conversation with defendant, they discussed "the shit in Bay City," money that defendant owed Dotson, Chucky, and Wurtzel picking defendant out of a lineup in the tractor case. When Dotson asked if they were going to do anything about Wurtzel, defendant said, "Nah, nah, no, I, I got a real good case. . . . [M]y lawyer will pick [Wurtzel's] fucking wings off." Defendant then stated that he thought the phone might be bugged.

Defendant was first tried for obtaining Wurtzel's property by false pretenses in February and March of 2004 in Saginaw County. During the trial, Detective VanHorn, Francis, and Wurtzel, among several others, testified for the prosecution. Defendant testified that he purchased the tractor and tiller in 1999 from Denny VanHaaren at Delta College where Denny was a bricklayer. Defendant presented a receipt from the transaction, and it was undisputed that Wurtzel's trailer was recovered at Delta College. Defendant further testified that he found Francis and White's driver's licenses in the tractor after purchasing it from Denny. The trial ended in a hung jury, and the case was scheduled for retrial on June 29, 2004. Detective VanHorn later testified that during the trial, he saw defendant in the hall and defendant said, "Fuck off VanHorn, fuck off."

On June 21, 2004, just eight days before the scheduled retrial, Detective VanHorn received a page from a phone number he did not recognize. The detective testified that he called the number and initiated a conversation, saying, "Somebody paged me from this number." The recipient of the call responded, "Yeah." When the detective then identified himself, the recipient said, "Never mind all that. I want to let you know I saw you in court last week, and I want to let you know that I know where you live, motherfucker." According to the detective, he recognized the recipient's voice almost immediately and believed that it was defendant. The detective also believed that defendant "was letting [him] know that there was no doubt that he was going to kill [him], attempt to kill [him], or harm [his] family," and that "it was just a matter of time."

A phone company representative testified that the cell phone used to call Detective VanHorn's pager on June 21 belonged to Brandean Rinness, but Rinness testified that she lost the phone in early June. According to the phone records, the call originated in Bay County and terminated in

5

Ogemaw County. The same cell phone was used to call the GM call center, defendant's girlfriend Roberta Haertel, a restaurant located on the same street that Haertel lived on, and another person associated with Haertel.

On June 24, 2004, the Saginaw County prosecutor charged defendant with intimidating a witness and obstructing justice, based on the statements made to Detective VanHorn over the phone. Defendant then moved to adjourn the retrial of the tractor case. The prosecution stipulated to the adjournment, indicating that it intended to use the facts of the intimidation case and the solicitation case as evidence of consciousness of guilt in the retrial of the tractor case.

In July of 2004, Detective VanHorn received a call on his cell phone. During the call, he heard a male voice that he did not recognize saying over and over, "I know where you live motherfucker." The call originated from a pay phone in Bay County and occurred while defendant was in Saginaw County jail. Detective VanHorn testified that the caller could have been James Franklin, a man he had previously testified against. Defendant's first trial attorney, Matthew Reyes, testified that he had represented Franklin in a number of cases and believed that Franklin could have made the call to Detective VanHorn. At a motion hearing in July of 2005, Reyes testified that he had planned, as a part of his trial strategy in this case, to create a reasonable doubt in the jurors' minds as to the identity of the person who first threatened Detective VanHorn by introducing Franklin as a possible perpetrator.

* * *

. . . The court then ruled that the [tractor, intimidation, and solicitation] cases would be tried separately. The next day, the court granted Reyes' motion to withdraw and the cases were adjourned.

In November of 2004, the prosecution filed a motion for reconsideration and joinder, requesting that [evidence] be admitted in the tractor case and that the tractor and intimidation cases be consolidated for trial. Defendant opposed the motion. In March of 2005, defendant was charged in Saginaw County with solicitation to commit murder. The trial court then ordered, in August of 2005, to consolidate the tractor case, the intimidation case, and the solicitation case for trial, primarily as a matter of judicial economy. The court further indicated that it would reconsider the admission of [evidence].

* * *

6

On December 28, 2005, defendant filed an application for emergency leave to appeal in this Court, along with motions for immediate consideration and stay of proceedings. Defendant argued that the trial court erred in consolidating the three lower court cases for trial and denying his motions to exclude the [evidence]. We granted defendant's motion for immediate consideration, but denied his application for leave to appeal and motion for stay. *People v Houthoofd*, unpublished order of the Court of Appeals, entered December 29, 2005 (Docket No. 267348).

The consolidated trial commenced on January 5, 2006, and concluded on February 13, 2006. After the prosecution rested, defendant moved for directed verdict in all three cases, and the trial court denied the motions. The jury convicted defendant of obtaining property by false pretenses, solicitation to commit murder, and witness intimidation involving a threat to kill, injure, or damage property or malicious use of a telephone.

Following trial, defendant moved for dismissal, new trial, and judgment notwithstanding the verdict. The trial court subsequently denied the motions. . . .

The trial court sentenced defendant to prison terms of five to ten years for the false pretenses conviction, and ten to 15 years for the intimidation conviction. The court exceeded the guidelines for the solicitation to commit murder conviction, sentencing defendant to 40 to 60 years imprisonment.

Defendant filed a claim of appeal in [the Court of Appeals] in April of 2006. In August of 2006, defendant filed an untimely motion to remand for an evidentiary hearing. Defendant argued that his trial counsel was ineffective for failing to move to dismiss for improper venue and failing to object to numerous instances of prosecutorial misconduct. He further argued that a previously unknown witness, Detective Eberhardt, could offer potentially exculpatory testimony. [The Court of Appeals] initially denied defendant's motion to remand, *People v Houthoofd*, unpublished order of the Court of Appeals, entered September 12, 2007 (Docket No. 269505), but later granted his motion for reconsideration and remanded "to the trial court so that defendant-appellant [could] file, within 14 days, a motion for new trial," *People v Houthoofd*, unpublished order of the Court of Appeals, entered October 16, 2007 (Docket No. 269505).

On remand, defendant moved for dismissal and new trial. The trial court held hearings on defendant's motion in November of 2007 and

7

January of 2008. On April 9, 2008, the trial court issued a lengthy written opinion and order denying defendant's motion for new trial. The court found that defendant's motion for dismissal exceeded the scope of the remand order.[2]

Defendant appealed as of right to the Court of Appeals alleging that venue was improper, the trial court committed evidentiary errors, and there was prosecutorial misconduct. In an unpublished per curiam opinion, the Court of Appeals vacated defendant's conviction for solicitation to commit murder on the basis of improper venue. The Court affirmed defendant's remaining convictions and sentences.

Defendant and the prosecution, in separate applications, have applied for leave to appeal in this Court. We granted leave to appeal on both applications and asked the parties to include among the issues to be briefed:

> whether venue was properly laid in Saginaw County with respect to the defendant's solicitation to commit murder and witness intimidation charges, whether the defendant is entitled to retrial on the false pretenses and witness intimidation charges in the event that his conviction for solicitation to commit murder is not reinstated, and the relevance, if any, of the defendant's statement to the trial court, over his counsel's objection, that he wanted the cases tried together.[3]

In this opinion, we address only whether venue was proper in Saginaw County for trial on the charges of solicitation to commit murder and witness intimidation.

---

[2] *People v Houthoofd*, unpublished opinion per curiam of the Court of Appeals, issued February 3, 2009 (Docket No. 269505).

[3] *People v Houthoofd*, 485 Mich 858 (2009).

8

## II.  STANDARD OF REVIEW

A trial court's determination regarding the existence of venue in a criminal prosecution is reviewed de novo.[4]   This case also presents issues of statutory interpretation, which are reviewed de novo.[5]

## III.  ANALYSIS

The general venue rule is that defendants should be tried in the county where the crime was committed.[6]   "[E]xcept as the legislature for the furtherance of justice has otherwise provided reasonably and within the requirements of due process, the trial should be by a jury of the county or city where the offense was committed."[7]

Defendant argues that Saginaw County was not the proper venue for prosecution of the charges of witness intimidation and solicitation to commit murder because all the acts done in perpetration of those offenses occurred in other counties.  The prosecution argues that venue was proper in Saginaw County for both charges.  The parties and the Court of Appeals assume that MCL 762.8, rather than the general venue rule, is the applicable rule in this case.  MCL 762.8 provides:

> Whenever a felony consists or is the culmination of 2 or more acts done in the perpetration thereof, said felony may be prosecuted in any county in which any one of said acts was committed.

---

[4] *People v Fisher*, 220 Mich App 133, 145; 559 NW2d 318 (1996).

[5] *In re Investigation of March 1999 Riots in East Lansing*, 463 Mich 378, 383; 617 NW2d 310 (2000).

[6] *People v Jendrzejewski*, 455 Mich 495, 499; 566 NW2d 530 (1997).

[7] *People v Lee*, 334 Mich 217, 226; 54 NW2d 305 (1952).

9

Applying MCL 762.8, the Court of Appeals concluded that venue was properly established in Saginaw County as to the intimidation charge, but not the solicitation charge.

Thus, we must examine MCL 762.8 to determine whether venue was proper in Saginaw County as the prosecution alleges. In interpreting statutes, we follow established rules of statutory construction. Assuming that the Legislature has acted within its constitutional authority, the purpose of statutory construction is to discern and give effect to the intent of the Legislature.[8] Accordingly, the Court must interpret the language of a statute in a manner which is consistent with the legislative intent.[9] In determining the legislative intent, we must first look to the actual language of the statute.[10] As far as possible, effect should be given to every phrase, clause, and word in the statute.[11] Moreover, the statutory language must be read and understood in its grammatical context.[12] When considering the correct interpretation, a statute must be read as a whole.[13] Individual words and phrases, while important, should be read in the

---

[8] *Potter v McLeary*, 484 Mich 397, 411; 774 NW2d 1 (2009), quoting *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[9] *Potter*, 484 Mich at 411.

[10] *Id.* at 410.

[11] *Sun Valley*, 460 Mich at 237.

[12] *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008).

[13] *Sun Valley*, 460 Mich at 237.

context of the entire legislative scheme.[14] In defining particular words within a statute, we must consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme.[15]

In *People v Flaherty*[16] and *People v Fisher*,[17] the Court of Appeals interpreted MCL 762.8 broadly and ruled that when an act done in perpetration of a felony has effects elsewhere that are essential to the offense, venue is proper in the place where the act has its effects. In the present case, the Court of Appeals summarized the facts and holdings in *Flaherty* and *Fisher*:

> In *Flaherty*, the defendant was charged in St. Clair County with larceny by false pretenses. *Flaherty*, *supra* at 116, 119. The defendant owned an insurance agency located in Macomb County, and defrauded a general insurance agency located in St. Clair County by accepting payment for an insurance policy that was never issued. *Id*. at 117, 119. The larceny was accomplished through a series of mail and telephone communications across county lines. *Id*. at 119. The *Flaherty* Court found that some of the defendant's "communication 'acts'" had effects in St. Clair County. *Id*. Specifically, the defendant's acts of placing a cover note and invoice in the mail and sending it to St. Clair County induced the general agency to authorize an invoice and mail payment to the defendant. *Id*. Noting that "detrimental reliance by the victim on the [defendant's] false representation" is an essential element of larceny by false pretenses, the *Flaherty* Court concluded that although the defendant was physically present in Macomb County, the "effective false representation occurred in St. Clair County." *Id*. Thus, venue was properly established in St. Clair County. *Id*.

---

[14] *Herman*, 481 Mich at 366.

[15] *Id.*, quoting *Sun Valley*, 480 Mich at 237, quoting *Bailey v United States*, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995).

[16] *People v Flaherty*, 165 Mich App 113; 418 NW2d 695 (1987).

[17] *People v Fisher*, 220 Mich App 133; 559 NW2d 318 (1996).

11

In *Fisher*, the defendant was charged in Wayne County with inciting perjury and attempted obstruction of justice. *Fisher*, *supra* at 135. The defendant had previously been convicted in Wayne County of murdering his wife and, pending an appeal of that conviction, was imprisoned in Jackson County. *Id.* at 135-136. While in prison, the defendant asked a prison mate to swear to a false affidavit and claim that he, not the defendant, had committed the crime for which the defendant had been convicted. *Id.* The *Fisher* Court noted that the defendant's acts were intended to affect the proceedings pending in Wayne County and that the charge of attempted obstruction of justice required proof that defendant committed an act with the intent "to hinder the due course of justice in the case pending in Wayne County." *Id.* at 149, 152. See *People v Milstead*, 250 Mich App 391, 405; 648 NW2d 648 (2002) (stating that obstruction of justice is generally defined as "an interference with the orderly administration of justice," "impeding or obstructing those who seek justice in a court, or those who have duties or powers of administering justice therein," or an "effort . . . to thwart or impede the administration of justice"). After examining federal case law holding that in obstruction of justice cases, "venue is proper in the district where the proceeding affected is pending," other states' decisions regarding offenses such as tampering with a witness, and this Court's reasoning in *Flaherty*, the *Fisher* Court concluded that, while MCL 762.8 does not use the words "effects" or "results," an "act that has effects elsewhere that are essential to the offense is, in effect, committed in the place where the act has its effects," and therefore that venue was properly established in Wayne County as to the attempted obstruction of justice charge. *Fisher*, *supra* at 146-150, 152. The defendant conceded that if Wayne County was the proper venue for prosecution of the attempted obstruction of justice charge, it was also the proper venue for the inciting perjury charge because both charges arose out of the same transaction.[18]

In *People v Webbs*,[19] the Court of Appeals narrowed the holdings of *Flaherty* and

*Fisher* and stated that "the plain language of MCL 762.8 requires an act to be done in the

[18] *People v Houthoofd*, unpublished opinion per curiam of the Court of Appeals, issued February 3, 2009 (Docket No. 269505).

[19] *People v Webbs*, 263 Mich App 531; 689 NW2d 163 (2004).

12

perpetration of the felony without regard to where the effects of the crime are felt . . . ."[20] In *Webbs*, the defendant was charged in Grand Traverse County with larceny by false pretenses; however, all of the acts done in perpetration of the offense took place in Wayne County.[21] The defendant falsely identified himself as James Hardy and applied for and received a loan in Wayne County. Hardy, a resident of Grand Traverse County, claimed that the defendant's acts affected him in his home county where he had to deal with the effects of the identity theft. The *Webbs* court ruled that the statute mandates that the crime be prosecuted in the county where the acts to perpetrate the felony were committed. The Court reasoned that since none of the acts were committed in Grand Traverse County, venue was not proper in that county. *Webbs* criticized the "effects" analysis of *Flaherty* and *Fisher*, commenting that the holding that venue is proper where the effects of the acts committed are felt does not comport with the plain language of the statute.

We agree with the *Webbs* analysis of MCL 762.8, and overrule the "effects" analysis of *Flaherty* and *Fisher*. MCL 762.8 is unambiguous and clearly provides that when a felony consists of two or more acts, venue for prosecution of the felony is proper in any county in which any one of the acts was committed. The statute does not contemplate venue for prosecution in places where the effects of the act are felt, and we

---

[20] *Id.* at 534.

[21] *Id.* at 532.

decline to extend the application of MCL 762.8 beyond the scope provided for in the statute.

Although the Court of Appeals decided this case under MCL 762.8, neither felony at issue here "consists or is the culmination of two or more acts . . . ." The crime of solicitation to commit murder requires the act of offering to give, promising to give, or giving anything of value in exchange for murder. MCL 750.157b.[22] The crime of witness intimidation, as it applies to the facts of this case, requires the act of discouraging or attempting to discourage an individual from testifying at a present or future official proceeding.[23] Nonetheless, our holding concerning the MCL 762.8 caselaw applies

---

[22] The solicitation to commit murder statute, MCL 750.157b, provides in relevant part:

> (1) For purposes of this section, "solicit" means to offer to give, promise to give, or give any money, services, or anything of value, or to forgive or promise to forgive a debt or obligation.

> (2) A person who solicits another person to commit murder, or who solicits another person to do or omit to do an act which if completed would constitute murder, is guilty of a felony punishable by imprisonment for life or any term of years.

[23] The witness intimidation statute, MCL 750.122, provides in relevant part:

> (3) A person shall not do any of the following by threat or intimidation:

> (a) Discourage or attempt to discourage any individual from attending a present or future official proceeding as a witness, testifying at a present or future official proceeding, or giving information at a present or future official proceeding.

14

equally here: it is the *act* that constitutes the felony—rather than its effects—that gives rise to venue.

Defendant committed the crime of witness intimidation when he threatened to harm Detective VanHorn or his family if VanHorn testified at defendant's trial. VanHorn testified that on June 21, 2004, as he was leaving his Michigan State Police post in Ogemaw County, he received a page from a number he did not recognize. He used his state-issued cell phone to return the call. The person who answered, whom VanHorn recognized as defendant, made a threatening statement. Phone records obtained to investigate the threatening phone call revealed that the call was made from a cell phone. A representative from the cell phone company testified that the particular call originated in Bay County and terminated in Ogemaw County. The representative also testified that

---

(b) Influence or attempt to influence testimony at a present or future official proceeding.

(c) Encourage or attempt to encourage any individual to avoid legal process, to withhold testimony, or to testify falsely in a present or future official proceeding.

\* \* \*

(7) A person who violates this section is guilty of a crime as follows:

\* \* \*

(c) If the violation involves committing or attempting to commit a crime or a threat to kill or injure any person or to cause property damage, the person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not more than $25,000.00, or both.

15

none of the calls she had been asked about originated or terminated in Saginaw County. Thus, the trial testimony established that VanHorn was in Ogemaw County and defendant was in Bay County when defendant threatened VanHorn. Neither defendant nor VanHorn was in Saginaw County when defendant, "by threat or intimidation," "[d]iscourage[d] or attempt[ed] to discourage" VanHorn from testifying at defendant's trial. MCL 750.122(3)(a). Defendant did not commit the act necessary to complete the crime of witness intimidation, threatening the detective, in Saginaw County. As established by the phone records, the act could be said to have been committed in Bay County, where the call was placed, or Ogemaw County, where the call was received, but not in Saginaw County. Accordingly, venue was improper in Saginaw County.

As for the solicitation charge, the evidence establishes that defendant solicited a fellow jail inmate, Dotson, to murder Wurtzel, a witness in the false pretenses case against him. The offer and promise to give money in exchange for the murder occurred while both defendant and Dotson were in the Arenac County jail. Thus, the act required for the crime of solicitation to commit murder, the offer or promise to give something of value for murder, occurred in Arenac County, and venue for the charge of that crime was not proper in Saginaw County.

Because venue was not proper in Saginaw County for the charge of either witness intimidation or solicitation to commit murder, we next consider whether statutory venue error in criminal prosecutions is subject to a harmless error analysis under MCL 769.26. MCL 769.26 provides:

16

No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

In analyzing the application of MCL 769.26, this Court has held that, for preserved nonconstitutional errors, the defendant has the burden of establishing a miscarriage of justice under a "more probable than not" standard in order to justify reversing a conviction.[24] An error is outcome-determinative if it undermines the reliability of the verdict.[25] For preserved constitutional errors, if the error is not a structural defect that defies harmless error analysis, the reviewing court must determine whether the beneficiary of the error has established that it is harmless beyond a reasonable doubt.[26] A structural error, however, is a fundamental constitutional error that defies a harmless error analysis.[27]

In this case, defendant preserved the venue error. In order to apply the harmless error analysis of MCL 769.26, we must first examine whether statutory venue error is a

---

[24] *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

[25] *People v Whittaker*, 465 Mich 422, 427; 635 NW2d 687 (2001).

[26] *People v Anderson (After Remand)*, 446 Mich 392; 521 NW2d 538 (1994).

[27] *People v Miller*, 482 Mich 540, 556; 759 NW2d 850 (2008).

17

constitutional error in order to determine the applicable standard of review.  In *People v Lee*[28] this Court recognized that "[i]n the absence of any limitation by constitutional provision, it seems to be generally recognized that the power of a State legislature to fix the venue of criminal prosecutions in a county or district other than that in which the crime was committed is unrestricted."[29]  The *Lee* Court was evaluating the constitutionality of MCL 762.8, and concluded that the statute was constitutional because the defendant's constitutional right to a speedy trial by an impartial jury was maintained. The Court noted that there was no explicit venue mandate in the Michigan Constitution of 1908.  In contrast, Michigan's prior constitution, the Michigan Constitution of 1835, did contain such a provision in article 1, § 10, which stated that "[i]n all criminal prosecutions, the accused shall have the right to a speedy and public trial by an impartial jury of the vicinage . . . ."  The corresponding provision in the Constitution of 1850, art 6, § 28, omitted the words "of the vicinage" qualifying a jury to try a criminal case, and this omission carried over to the 1908 and 1963 Constitutions.[30]  Thus, Michigan's constitution only requires that a defendant's constitutional right to a fair and speedy trial before an impartial jury be preserved, and does not require that the jury trial be in the

---

[28] *People v Lee*, 334 Mich 217; 54 NW2d 305 (1952).

[29] *Id*. at 225 (citation and quotation marks omitted).

[30] See Const 1908, art 2, § 19, and Const 1963, art 1, § 20.

county where the crime occurred; as a result, statutory venue error is not a constitutional error.[31]

The Legislature has taken advantage of this latitude regarding venue to enact statutes designed to preserve a defendant's right to a fair trial. For example, MCL 762.7 allows a change of venue in criminal prosecutions upon good cause shown by either party.[32] This statute has been utilized to change venue in cases where pretrial publicity in

---

[31] Traditionally, venue rules have served to ensure that proceedings are held in the most convenient forum. *Webbs*, 263 Mich App at 533. Convenience is evaluated in terms of interests of the parties and relevant witnesses. *Id*. However, in determining a convenient forum, the primary goal is to minimize the costs of litigation, not only by reducing the burdens on the parties, but also by considering the strains on the system as a whole. *Id*. Determining proper venue should only concern the selection of a fair and convenient location where the merits of a dispute can be adjudicated. *Id*. Thus, venue is a matter of procedure in courts, and will not be a basis for setting aside or reversing a verdict unless the venue error resulted in a miscarriage of justice.

[32] MCL 762.7 provides:

Each court of record having jurisdiction of criminal cases upon good cause shown by either party may change the venue in any cause pending therein, and direct the issue to be tried in the circuit court of another county, and make all necessary rules and orders for the certifying and removing [of] such cause, and all matters relating thereto, to the court in which such issue shall be ordered to be tried, and the court to which such cause shall be so removed shall proceed to hear, try and determine the same, and execution may thereupon be had in the same manner as if the same had been prosecuted in the court having original jurisdiction of such cause, except that in all causes when the defendant shall be convicted and be sentenced to imprisonment in the county jail or to pay a fine, or to both such imprisonment and fine, the court awarding such sentence shall have authority to direct and shall direct that the defendant be imprisoned in the county jail of the county in which such prosecution commenced; and that such fine, when paid, shall be paid over to the county treasurer of the county in which such prosecution commenced, in the same manner as is now provided by law for paying over fines to county treasurers; and in

a locality is so rampant as to make a fair jury selection in the locality difficult. Although

the prosecution in the present case did not establish venue under this statute, the existence

of the statute reinforces our conclusion that venue in the location where the crime was

committed is not constitutionally required.

This Court has held that the standard of review for preserved nonconstitutional

error places the burden on the defendant to establish a miscarriage of justice under a

"more probable than not" standard in order to warrant reversal.[33] This generally requires

a showing of prejudice, i.e., that the error affected the outcome of the lower court

proceedings.[34] Defendant has not established prejudice for the witness intimidation or

every case where a change of venue is ordered, all expenses of such trial shall be a charge upon the county in which the prosecution originated; and when there shall be a disagreement of the jury on the trial of any criminal cause in the circuit court to which such cause was ordered for trial, the circuit judge before whom the same was tried, if he shall deem that the public good requires the same, may, upon cause shown by either party, order and direct the issue to be tried in the circuit court of another county in the state; and the court to which such cause shall be removed shall proceed to hear, try and determine the same in the same manner and with like effect as was pursued by the circuit court making such order: Provided, That in any and all suits, proceedings, causes or actions now pending in any of the circuit courts of this state, whether the court has general or special jurisdiction, a change of venue may be had in the manner provided and in accordance with section 10 of Act No. 157 of the Public Acts of 1851, as amended by Act No. 309 of the Public Acts of 1905 and the provisions of said act shall be continued in full force and effect for such purpose: Provided further, That in all suits, proceedings, causes or actions in which a change of venue has been granted, the court to which such suit, proceeding, cause or action has been transferred, shall retain jurisdiction.

[33] *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999); *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999).

[34] *Carines*, 460 Mich at 763.

solicitation charges. With respect to the witness intimidation charge, defendant has proffered no argument that it is more probable than not that the outcome of the trial would have been different had he been prosecuted in another county, nor has he shown that he was deprived of a fair trial by an impartial jury. With respect to the solicitation charge, defendant argues that he was prejudiced because the prosecutors in Arenac County had declined to prosecute him on that charge. However, this is not the same as arguing that it is more probable than not that the outcome of the case would have differed had he been tried in Arenac County. MCL 769.26 requires a miscarriage of justice in order to warrant reversal. Defendant received a fair trial before an impartial jury, and it cannot be argued that there was a miscarriage of justice simply because the trial was in Saginaw County. Therefore, defendant has not met his burden of proof to establish that, more probably than not, there was a miscarriage of justice by trying him for witness intimidation and solicitation to commit murder in Saginaw County. Thus, we hold that lack of proper venue is subject to a harmless error analysis and that the venue error did not undermine the reliability of the verdicts. Accordingly, defendant did not suffer a miscarriage of justice and his convictions for witness intimidation and solicitation to commit murder should not be vacated.

Moreover, defendant's convictions should not be vacated because the Legislature has provided, in MCL 600.1645, that "[n]o order, judgment, or decree shall be void or voidable solely on the ground that there was improper venue." This provision of the Revised Judicature Act (RJA) is applicable to criminal proceedings as recognized by the title of the act, which provides that the RJA is applicable to "pleading, evidence, practice

21

and procedure in civil and criminal actions and proceedings in said courts . . . ." This Court has also recognized that the RJA can be applicable to criminal proceedings and procedure.[35] Because criminal venue is inherently procedural in nature,[36] MCL 600.1645 applies.[37] Thus, defendant's convictions cannot be vacated solely on grounds of improper venue.[38]

---

[35] *People v Milton*, 393 Mich 234; 224 NW2d 266 (1974).

[36] *Webbs*, 263 Mich App at 533.

[37] We disagree with the argument that MCL 600.8312(5) suggests that MCL 600.1645 does not apply to criminal cases. First, MCL 600.8312(5) is located in the section of the RJA addressing district courts, and the statute as a whole addresses venue for district court cases, not circuit court cases. Moreover, MCL 600.1645 does not purport in any way to determine what particular venue would attach to a case. Thus, MCL 600.8312(5) does not bar this Court, implicitly or otherwise, from citing MCL 600.1645 as an alternative basis for its decision to uphold defendant's circuit court convictions.

[38] MCL 769.26 and MCL 600.1645 both deal with the result of a procedural error in proceedings, the former with general procedural errors, and the latter with specific venue errors. Both mandate that a procedural error shall not result in a judgment or verdict being set aside or reversed. MCL 769.26 qualifies that a procedural error can only lead to a judgment or verdict being set aside or reversed if there is a miscarriage of justice. MCL 600.1645, on the other hand, does not contain a similar clause; rather, the statute does mandate that no judgment be void or voidable solely on the ground that there was improper venue. Venue is strictly procedural in nature and does not pertain to a court's jurisdiction over a case. As the Committee Comment to chapter 16 of the RJA (Venue) states, the Legislature specifically adopted provisions to separate jurisdiction issues from venue issues, and indicated that venue is a matter of convenience that is governed by logic and sound policy considerations. Thus, improper venue alone does not necessarily result in a miscarriage of justice because matters of venue are matters of convenience. However, if an improper venue choice led to other more serious errors, such as deprivation of a defendant's right to due process or trial by a fair and impartial jury, the alleged errors would not "solely" be for improper venue, and MCL 600.1645 would not apply.

Finally, we note that early Michigan caselaw required that a conviction be reversed and the case remanded for a new trial where venue was not proved beyond a reasonable doubt. See *People v Jackzo*, 206 Mich 183; 172 NW 557 (1919), *People v Warner*, 201 Mich 547; 167 NW 878 (1918), and *People v Ayers*, 182 Mich 241; 148 NW 383 (1914). However, these cases were decided before the Legislature's adoption of both MCL 769.26 (adopted in 1927) and MCL 600.1645 (adopted in 1961; effective in 1963). As previously noted, it is within the purview of the Legislature to adopt rules governing venue as long as constitutional mandates are met.[39] Michigan's Constitution does not have a specific venue requirement, and as long as other constitutional mandates are upheld, the legislative changes to Michigan venue law control. As a result, the early Michigan caselaw requiring that a conviction be reversed and the case remanded for a new trial because of improper venue has been abrogated by statute and is no longer applicable.

The dissents cite *People v Hall*, 375 Mich 187; 134 NW2d 173 (1965) as an example of post-1927 caselaw that requires a conviction to be reversed because of improper venue. However, reliance on *Hall* for this proposition is flawed for two

---

MCL 600.1645 is also consistent with MCL 767.45(1)(c), which provides in relevant part that "[n]o verdict shall be set aside or a new trial granted by reason of failure to prove that the offense was committed in the county or within the jurisdiction of the court unless the accused raises the issue before the case is submitted to the jury." This provision governs a defendant's claim that the prosecution failed to prove venue at trial, rather than a claim that venue was improper.

[39] *Lee*, 334 Mich at 226.

reasons. First, *Hall* concluded that the "proceedings before the magistrate were fatally defective" and that "[t]he motion to quash should have been granted" based solely on the holding in *Jackzo*.[40] *Hall* did not independently determine that a venue error must lead to reversal and did not mention MCL 769.26. As previously discussed, reliance on *Jackzo* to reverse a conviction on the basis of improper venue is flawed because this holding has been abrogated by statute and is no longer applicable. As a result, reliance on *Hall* for this proposition is also error. Second, since *Hall* was decided, this Court has held "that error at the preliminary examination stage should be examined under a harmless error analysis."[41] This principle applies to alleged venue errors and automatic reversal because of improper venue is unwarranted.

## IV. CONCLUSION

In this opinion, we address only whether venue was proper in Saginaw County for defendant's solicitation to commit murder and witness intimidation charges. We conclude that venue was not proper for either charge because neither crime was committed in Saginaw County. However, because a venue error is not a constitutional structural error, this matter is subject to a harmless error analysis under MCL 769.26. In this case, defendant was not deprived of his due process right to a fair trial before an impartial jury and there has been no miscarriage of justice. Moreover, MCL 600.1645 explicitly provides that no judgment shall be voided solely on the basis of improper

---

[40] *Hall*, 375 Mich at 192.

[41] *People v Lisa Hall*, 435 Mich 599, 602; 460 NW2d 520 (1990).

24

venue. Thus, we reverse the Court of Appeals in part and reinstate defendant's conviction for solicitation to commit murder. We remand to the Court of Appeals for consideration of whether the trial court failed to articulate substantial and compelling reasons for upwardly departing from the sentencing guidelines when imposing defendant's solicitation and witness intimidation convictions. With respect to all other issues raised in the applications for leave, we deny leave to appeal.

WEAVER, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred with HATHAWAY, J.

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                                                No. 138959

TOD KEVIN HOUTHOOFD a/k/a TODD
KEVIN HOUTHOOFD,

      Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                                                No. 138969

TOD KEVIN HOUTHOOFD a/k/a TODD
KEVIN HOUTHOOFD,

      Defendant-Appellant.

_____

CORRIGAN, J. (*concurring*).

I join the majority opinion in full. I would further conclude that, under MCL 600.1645, venue challenges in criminal cases must be resolved through interlocutory appeals. A criminal defendant should not be permitted to seek to overturn a verdict on the sole basis that the trial was held in an improper venue. I urge my colleagues to consider adopting a court rule or recommending legislative action to clarify this currently uncertain aspect of criminal procedure.

MCL 600.1645 provides that "[n]o order, judgment, or decree shall be void or voidable solely on the ground that there was improper venue." In *Grebner v Clinton Charter Twp*,[1] the Court of Appeals rejected the defendants' argument that the trial court erred in denying their motion for change of venue. It concluded that the issue was moot in light of MCL 600.1645 and held that "[t]he proper manner in which to raise this issue is an interlocutory appeal from the order denying the motion for a change of venue."[2] In *Gross*, the Court of Appeals had stated previously:

> To require plaintiff to raise the issue following a trial in the Washtenaw Circuit Court would effectively deny plaintiff the opportunity to have a resolution on the merits of whether the original change of venue was proper. Effective appellate review of a venue ruling can be granted only from an appeal from an interlocutory order because MCL 600.1645 precludes appellate relief based solely upon improper venue. [*Gross*, 199 Mich App at 625 (citation omitted).][3]

I would apply this sound caselaw clarifying the procedure in civil cases to criminal cases generally and to this case. A criminal defendant who objects to the prosecution's choice of venue should be required to challenge venue through an interlocutory appeal.

---

[1] 216 Mich App 736, 744-745; 550 NW2d 265 (1996).

[2] *Id.* at 744, citing *Gross v Gen Motors Corp*, 199 Mich App 620, 625; 502 NW2d 365 (1993), rev'd on other grounds 448 Mich 147 (1995).

[3] Defendant sought an interlocutory appeal in the Court of Appeals in this case but did not raise the venue issue. He argued that the trial court erred in consolidating the three lower court cases for trial and denying his motions to exclude various items of evidence referred to as the "kitchen sink material." The Court of Appeals granted defendant's motion for immediate consideration, but denied his application for leave to appeal and motion for stay. *People v Houthoofd*, unpublished order of the Court of Appeals, entered December 29, 2005 (Docket No. 267348).

2

As the majority opinion explains, a venue error is neither jurisdictional nor constitutional. Accordingly, no verdict in any case should be overturned solely on the ground that the trial was held in an improper venue.[4]

Finally, this case illustrates the need for legislation or a court rule that specifically addresses criminal venue challenges. I would consider adopting a court rule or recommending legislation to codify the rule in *Grebner* and *Gross* for both civil and criminal proceedings.[5]

Maura D. Corrigan

---

[4] Chief Justice KELLY argues that "[b]y explicitly stating [in MCL 600.8312(5)] that MCL 600.1645 applies to venue in civil actions, the Legislature has implicitly provided that it does not apply in criminal cases." MCL 600.8312(5) states that "[v]enue in civil actions . . . shall be governed by sections 1601 to 1659 . . . ." In my view, this language does not preclude the application of MCL 600.1645 to a criminal action, particularly given that MCL 600.8312(1) through MCL 600.8312(4) only address where venue is proper in a criminal action; these subsections do not address the consequences of holding a criminal trial in an improper venue.

[5] The Court has opened an administrative file, ADM File No. 2009-24, to address this deficiency in the criminal law as it relates to venue and to consider whether to recommend legislative action.

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v                                    No. 138959

TOD KEVIN HOUTHOOFD, also known as
TODD KEVIN HOUTHOOFD,

      Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                    No. 138969

TOD KEVIN HOUTHOOFD, also known as
TODD KEVIN HOUTHOOFD,

      Defendant-Appellant.

_____

KELLY, C.J. (*dissenting*).

      I agree with the majority that MCL 762.8 is inapplicable to defendant's witness intimidation and solicitation convictions under the facts of this case.[1] I also concur that

---

[1] I do not believe that the crimes of solicitation to commit murder or witness intimidation could never consist of the culmination of two or more acts, making MCL 762.8 applicable. I also do not read the majority opinion to stand for that proposition.

Saginaw County was an improper venue for both charges and that *People v Flaherty*[2] and *People v Fisher*[3] should be overruled. Finally, I agree with remanding this case to the Court of Appeals for consideration of whether the trial court articulated substantial and compelling reasons for imposing a departure sentence.

However, the remainder of the majority opinion suffers from a fundamental defect. It makes sweeping changes in an important area of the law without considering existing precedent or the ramifications of the changes. I would affirm the Court of Appeals judgment vacating defendant's conviction for solicitation to commit murder but on a somewhat different basis. I would also vacate defendant's conviction for witness intimidation because *People v Hall*[4] is controlling and requires such a result.

I further dissent from the majority's decision to apply MCL 769.26, and especially to apply MCL 600.1645 to venue errors in criminal cases. The majority approaches this case as though it is writing on a blank slate rather than dealing with established jurisprudence that suggests different answers from those the majority embraces. Moreover, the majority's reliance on MCL 600.1645 obviates the application of MCL 769.26. Venue errors, harmful or not, are no longer grounds for a new trial.

---

[2] *People v Flaherty*, 165 Mich App 113; 418 NW2d 695 (1987).

[3] *People v Fisher*, 220 Mich App 133; 559 NW2d 318 (1996).

[4] *People v Hall*, 375 Mich 187; 134 NW2d 173 (1965).

ANALYSIS

It is well established that a defendant must object to venue before the case is submitted to a jury. If he or she fails to object, improper venue is not a ground for disturbing the defendant's conviction.[5] Courts have frequently invoked MCL 767.45(1)(c) when declining to reverse a defendant's convictions in cases where an objection had not been timely raised.[6] However, when a defendant has preserved a venue objection, courts have granted relief.[7] MCL 767.45(1)(c) provides that the indictment or information charging a defendant shall include:

> That the offense was committed in the county or within the jurisdiction of the court. No verdict shall be set aside or a new trial granted by reason of failure to prove that the offense was committed in the county or within the jurisdiction of the court unless the accused raises the issue before the case is submitted to the jury.

In *Hall*, this Court considered a defendant's appeal from his conviction for escape from prison. A preliminary examination was held, and the defendant was bound over for trial. Before trial, he filed a motion to dismiss, challenging the venue and the jurisdiction of the court. The trial court denied the motion, and the defendant was subsequently convicted.

---

[5] MCL 767.45(1)(c). This specific statutory provision was enacted in 1927 but existed in some form well into the 19th century.

[6] See, e.g., *People v Petrosky*, 286 Mich 397, 400-401; 282 NW 191 (1938); *People v Carey*, 36 Mich App 640, 641; 194 NW2d 93 (1971).

[7] *Hall*, 375 Mich at 192; see also *People v Sutton*, 36 Mich App 604, 606-607; 194 NW2d 3 (1971).

3

This Court unanimously vacated his conviction. It concluded that the failure to prove venue at the preliminary examination deprived the circuit court of jurisdiction to conduct the subsequent trial. The *Hall* Court stated:

> Such proof established no venue in Alger county, nor any place else. This want of proof could not be supplied on trial. The proceedings before the magistrate were fatally defective. The motion to quash should have been granted. See *People* v. *Jackzo*, 206 Mich 183, pp 192, 193 [172 NW 557 (1919)].
>
> Our holding here should not be misconstrued as affecting the settled principle that no verdict shall be set aside nor new trial granted for failure to prove that the offense was committed within the jurisdiction of the court. (See *People* v. *Petrosky*, 286 Mich 397 [282 NW 191 (1938)], and CL 1948, § 767.45, (Stat Ann 1954 Rev § 28.985). Nor does it affect the equally settled holding that it is within the discretion of the trial court to reopen a case for the purpose of proving venue. *People* v. *Eger*, 299 Mich 49, 58 [299 NW 803 (1941)]. Both of the foregoing holdings are concerned with the failure to prove venue *upon trial* and the permissible remedies therefor. Here we are concerned with a failure to prove venue *on examination* and a timely motion to quash before trial. As we previously noted the question in this case required disposition before the defendant was held to trial. Because the proof on examination was fatally inadequate, and timely motion challenging the binding over was made, the circuit court on the record made in the magistrate proceeding was powerless to hold defendant to trial.[8]

In this case, before trial, defendant filed a timely motion to quash the bindover on the charge of solicitation to commit murder. In his accompanying brief, defense counsel argued that the case was not within the jurisdiction of the court because all the relevant alleged acts occurred in Arenac County, not Saginaw County. Therefore, *Hall* is

---

[8] *Hall*, 375 Mich at 192 (emphasis in original).

4

analogous and is controlling here.[9] Defendant's conviction for solicitation to commit murder must be vacated and the case remanded with instructions to quash the bindover.

Regarding defendant's conviction for witness intimidation, defendant also filed a motion to dismiss this charge before trial. As with the solicitation charge, it was apparent at the time of the preliminary examination that the prosecution failed to offer any evidence to show that venue was proper in Saginaw County. Only under the effects-based analysis of the Court of Appeals decisions in *Flaherty* and *Fisher*, which the majority overrules, could venue for this offense be proper in Saginaw County.[10] Absent that authority, defendant's conviction on this offense must fail also.

This conclusion is consistent with MCL 767.45(1)(c). MCL 767.45(1)(c) disallows setting aside a verdict or granting a new trial for failure to prove venue unless the accused objects before the case is submitted to the jury. The affirmative inversion of

---

[9] I do not agree with the majority's attempt to distinguish *Hall* from this case. First, the majority discounts *Hall* because it cited *Jackzo* (which the majority today concludes was abrogated by MCL 769.26 and MCL 600.1645) and did not cite MCL 769.26. This argument makes *Hall* inapplicable only if one accepts without question the majority's underlying premise that MCL 769.26, not MCL 767.45(1)(c), applies here and that MCL 769.26 abrogated *Jackzo*.

The majority also cites a later case, *People v Lisa Hall*, 435 Mich 599; 460 NW2d 520 (1990), for the proposition that "error at the preliminary examination stage should be examined under a harmless error analysis." *Id*. at 602. But the 1990 *Hall* case did not involve venue. It did not cite the earlier *Hall* case that involved a different defendant, and nowhere stated that it applied to all errors at the preliminary examination stage.

[10] The prosecution's only argument was that venue was proper in Saginaw County because defendant intimidated the witness to prevent him from testifying in a proceeding in Saginaw County.

5

this rule, as past courts have noted, is that when the issue is preserved, verdicts will be set aside if venue is improper or unproven.[11]

## THE MAJORITY'S NEW VENUE RULES

The preceding analysis should fully resolve the issue on appeal in this case. But the majority proceeds, explicitly or *sub silentio*, overruling numerous cases and jettisoning venerable jurisprudence in its wake. Consequently, I must explain my disapproval of the new venue rules that the majority creates today.

Because *Hall* controls the outcome of this case, I disagree with the majority's decision to invoke MCL 769.26 and MCL 600.1645. We did not specifically ask the parties to brief whether improperly laid venue can be harmless error. Hence, the parties devoted, *in toto*, 4 out of 198 pages of briefing to the harmless error issue, hardly a comprehensive treatment. Nonetheless, the majority seizes on this issue and summarily concludes that improper venue is subject to a harmless error analysis.

The majority thereby discounts the venue error here by concluding that it was harmless under MCL 769.26 or, alternatively, that MCL 600.1645 prohibits vacating defendant's convictions "solely" on the basis of improper venue. I find the first conclusion unreliable for several reasons and the second wholly without support.

---

[11] I see no basis for distinguishing between allegations that venue was improper and allegations that venue was not proven. In either case, insufficient evidence exists to support venue in the location where the proceedings are occurring.

6

HARMLESS ERROR

The majority recognizes that, for a harmless error analysis to apply to venue errors, it must abolish the requirement that the prosecution prove venue beyond a reasonable doubt. It would be a meaningless exercise to require the prosecution to make such a showing if its failure to succeed would amount to nothing but harmless error.

But in so doing, the majority steamrolls longstanding precedent that requires the prosecution to prove venue beyond a reasonable doubt.[12] It rejects earlier caselaw, arguing that that precedent was abrogated by the Legislature's adoption of MCL 769.26 in 1927 and MCL 600.1645 in 1961.[13]

A more deliberative approach is needed. First, *Hall* and *Sutton*, both decided after enactment of these statutory provisions, constitute strong refutation of the abrogation argument. So too do decades of Court of Appeals caselaw post-dating MCL 769.26 and MCL 600.1645, cases holding that the prosecution must prove venue beyond a reasonable doubt.[14]

Also to be considered is the language in MCL 767.45(1)(c), which the majority largely dismisses. In addition, the requirement that venue be proven beyond a reasonable

---

[12] *People v Jackzo*, 206 Mich 183; 172 NW 557 (1919); *People v Warner*, 201 Mich 547; 167 NW 878 (1918); *People v Ayers*, 182 Mich 241; 148 NW 383 (1914).

[13] *Ante* at ___.

[14] *People v Gayheart*, 285 Mich App 202, 216; 776 NW2d 330 (2009); *People v Webbs*, 263 Mich App 531, 533; 689 NW2d 163 (2004); *People v Fisher*, 220 Mich App 133, 145; 559 NW2d 318 (1996); *People v Belanger*, 120 Mich App 752, 755; 327 NW2d 554 (1982); *People v Plautz*, 28 Mich App 621, 622-623; 184 NW2d 761 (1970).

doubt is enshrined in our standard jury instructions.[15] The majority implicitly overturns all of this and ignores the other arguments that contradict its conclusion, without so much as acknowledging any of it.[16]

Applying a harmless error analysis to venue errors is also an exercise in futility. As this Court recently asked, "[w]hat is the point . . . if the error is always going to be harmless?"[17] I can imagine few circumstances under which a defendant could demonstrate that it is more probable than not that a venue error was outcome determinative.[18]

Moreover, even if I accepted the majority's decision to analyze venue errors using a harmless error analysis, I would disagree that harmless error occurred in this case. This defendant offers a more compelling argument than most who allege venue errors; he claims that prosecutors in Arenac County specifically declined to prosecute him for solicitation to commit murder. This assertion, if true, would establish that it is more probable than not that the outcome would have been different but for the venue error. Indeed, it is hard to imagine a scenario that would more convincingly meet the "more

---

[15] See CJI2d 3.10.

[16] I agree with Justice CAVANAGH's observation that the majority also neglects the rule that "legislative amendment of the common law is not lightly presumed." *Post* at ___ (CAVANAGH, J., dissenting) (quotation marks and citations omitted).

[17] *People v Francisco*, 474 Mich 82, 92 n 10; 711 NW2d 44 (2006).

[18] I continue to believe that this Court's test for preserved nonconstitutional error established in *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999), is wrong. See Justice CAVANAGH's dissenting opinion in *Lukity*, which I joined. *Id.* at 504-510 (CAVANAGH, J., dissenting).

8

probable than not" *Lukity* standard.  Defendant persuasively argues that he would never have been charged with solicitation to commit murder if the case had not proceeded in Saginaw County.

## APPLICATION OF MCL 600.1645 TO CRIMINAL CASES

The majority also errs by applying MCL 600.1645 to criminal proceedings, given the dearth of authority to support such an application.  The prosecution and defendant also agreed that MCL 767.45(1)(c), not MCL 600.1645, is controlling.  The applicability of MCL 600.1645 in criminal cases was not briefed by the parties or even cited in their supplemental briefs.  When two justices inquired about the possible applicability of the provision at oral argument, defense counsel responded in part:

> First, I don't want to lose this case on something that I hadn't even briefed.  So if you're thinking about that I'd appreciate it if I could maybe – I'm always up for writing another brief.  So if I can submit another five pages or something on it I'd be more than happy to.

The parties did file post-argument briefs addressing the issue, but even then, they agreed that MCL 767.45(1)(c), not MCL 600.1645, governs venue in criminal proceedings.  The prosecution and the majority can point to only one case, *People v Milton*,[19] where this Court stated generally that provisions of the Revised Judicature Act (RJA)[20] apply to criminal proceedings.  However, *Milton* involved the specific question whether the provisions of the RJA defining jurisdiction applied to criminal cases.  *Milton*

---

[19] *People v Milton*, 393 Mich 234; 224 NW2d 266 (1974).

[20] MCL 600.101 *et seq*.

9

did not involve venue or cite MCL 600.1645. Nor did it make any sweeping pronouncement that all provisions of the RJA apply in criminal cases.

The chapter of the RJA in which MCL 600.1645 is located, MCL 600.1601, *et seq.*, specifically states that "[t]he provisions of this chapter relate to venue and are not jurisdictional."[21] Therefore, *Milton* is inapplicable. This issue appears to be an open question deserving far more analysis than the majority has given it.

There is little basis for the majority's decision to apply MCL 600.1645 to criminal cases. First, the language used in MCL 600.1645 suggests that it does not apply to criminal cases. MCL 600.1645 states that no "order, judgment, or decree shall be void or voidable solely on the ground that there was improper venue."[22] By contrast, MCL 767.45(1)(c) states that "[n]o *verdict shall be set aside* or *a new trial granted* by reason of failure to prove that the offense was committed in the county or within the jurisdiction of the court unless the accused raises the issue before the case is submitted to the jury."[23] It follows that MCL 767.45(1)(c) is more directly and specifically applicable to venue errors in criminal cases than MCL 600.1645.[24]

---

[21] MCL 600.1601.

[22] MCL 600.1645.

[23] MCL 767.45(1)(c) (emphasis added). Thus, I cannot agree with the majority that MCL 600.1645 is "consistent" with MCL 767.45(1)(c). *Ante* at ___ n ___.

[24] "'It is a rule of statutory construction—"that where there are two acts or provisions, one of which is special and particular, and certainly includes the matter in question, and the other general, which, if standing alone, would include the same matter and thus conflict with the special act or provision, the special must be taken as intended to constitute an exception to the general act or provision . . . .""" *Reed v Secretary of*

10

Second, if the majority wishes to apply RJA provisions to criminal cases, it ought to apply those that explicitly state that they apply to such cases. MCL 600.8312(1) to (4) state that venue in criminal actions for violations of state law and various ordinances "shall" be in the county, district, or political subdivision where the violation took place.[25] MCL 600.8312(5), by contrast, specifically states that "[v]enue in civil actions . . . shall be governed by sections 1601 to 1659 . . . ." By explicitly stating that MCL 600.1645 applies to venue in civil actions, the Legislature has implicitly indicated that it does not apply in criminal cases.[26] Third, *Hall* also expressly contradicts the majority's decision

---

*State*, 327 Mich 108, 113; 41 NW2d 491 (1950), quoting *Heims v Davison Twp Sch Dist No 6*, 253 Mich 248, 251; 234 NW 486 (1931), quoting *Crane v Reeder*, 22 Mich 322, 333-334 (1871).

[25] As we have stated numerous times, the word "shall" constitutes a mandatory directive. See, e.g., *Oakland Co v Michigan*, 456 Mich 144, 154-155; 566 NW2d 616 (1997) (opinion by KELLY, J.).

MCL 600.8312 is located in the section of the RJA addressing district courts, as the majority observes. I cite it because it offers support for the proposition that the Legislature did not intend MCL 600.1645 to be applied to criminal cases. Why would MCL 600.1645 apply only to "civil actions" in district courts, yet apply to both civil and criminal actions in circuit courts?

I also note that MCL 600.8311(d) gives district courts jurisdiction over preliminary examinations "in all felony cases and misdemeanor cases not cognizable by the district court . . . ." Thus, MCL 600.8312 does apply to felony cases, or, at a minimum, to their preliminary examinations. This conclusion is further bolstered by the fact that this Court recently cited MCL 600.8312 as authority in a criminal case tried in circuit court. *People v Jendrzejewski*, 455 Mich 495, 499 n 4; 566 NW2d 530 (1997).

[26] Thus, I strongly disagree with Justice CORRIGAN's concurrence, which would broaden the application of MCL 600.1645 even further than the majority does. Although requiring objections to improper venue in criminal cases to be raised in an interlocutory appeal may be a wise policy decision, it is not what the Legislature requires. Rather,

11

to apply MCL 600.1645 to criminal cases. *Hall* specifically held that a defendant's conviction is void because the court is "powerless" to try him if venue was not proven at the preliminary examination.[27]

Finally, the majority's application of MCL 600.1645 is unnecessary and its ramifications are unclear. Why must MCL 600.1645 apply at all to criminal cases if venue errors are subject to harmless error analysis under MCL 769.26? Conversely, applying MCL 600.1645 makes MCL 769.26 irrelevant in this context. Under the majority's analysis, venue errors are not cause for reversing a conviction "solely" on the basis of improper venue. Thus, MCL 769.26 is superfluous because, even if a defendant shows that a venue error was harmful, absent any other error, MCL 600.1645 would nevertheless preclude reversal.

Also, to what extent are other provisions of the RJA now applicable to criminal cases? Will other provisions of the Code of Criminal Procedure be rendered irrelevant because RJA provisions will control instead? The majority opinion spawns many questions but offers few answers.

### CONCLUSION

I agree with the majority that MCL 762.8 does not apply to this case. I also agree that Saginaw County was an inappropriate venue for the witness intimidation and

---

MCL 767.45(1)(c), which does apply to such errors, requires only that a defendant raise a venue objection before the case is submitted to a jury.

[27] *Hall*, 375 Mich at 192.

solicitation to commit murder charges and that *Flaherty* and *Fisher* should be overruled. However, I vigorously dissent from the new venue rules that this majority has so casually established.

Marilyn Kelly

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v                                 No. 138959

TOD KEVIN HOUTHOOFD a/k/a TODD
KEVIN HOUTHOOFD,

       Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v                                 No. 138969

TOD KEVIN HOUTHOOFD a/k/a TODD
KEVIN HOUTHOOFD,

       Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

I disagree with the majority's hasty decision to affirm defendant's convictions. Although I generally agree with the majority that, under the facts of this case, venue was not proper in Saginaw County for defendant's trial on charges of witness intimidation and solicitation to commit murder, and I also agree that *People v Flaherty*, 165 Mich App 113; 418 NW2d 695 (1987), and *People v Fisher*, 220 Mich App 133; 559 NW2d 318 (1996), should be overruled because those cases gave MCL 762.8 an overly broad

interpretation that exceeded the scope of the statute's plain language, I respectfully disagree with the remainder of the majority opinion.

To begin with, I disagree with the majority's decision to extend the harmless error analysis to claims of improper venue. As recognized by Chief Justice KELLY's dissent, extending the harmless error analysis to claims of improper venue will likely result in a futile exercise in most, if not all, cases under the majority's reasoning in this case. Further, the Court of Appeals did not address this argument, and, as mentioned by Chief Justice KELLY, this issue took up a small portion of the parties' briefs. Accordingly, I would remand to the Court of Appeals to consider this jurisprudentially significant issue of apparent first impression.

I also disagree with the majority's application of MCL 600.1645 to this case. This statute has never been applied to a criminal case, and it was mentioned for the first time at oral argument by justices of this Court. Further, given the majority's determination that any error in this case was harmless, I question the necessity of the majority's decision to affirm the jury's verdict on this alternative basis. Because the application of MCL 600.1645 is unnecessary to reach in this case and is, thus, likely nothing more than obiter dictum, I would reserve judgment on this issue.[1]

Finally, I dissent from the majority's apparent holding that caselaw requiring the prosecution to *prove* venue beyond a reasonable doubt has been abrogated by statute. It

---

[1] I would also not reach the issue of whether, under MCL 600.1645, venue challenges in criminal cases must be resolved though an interlocutory appeal.

is well established that "'legislative amendment of the common law is not lightly presumed,'" *Dawe v Dr Reuven Bar-Levav & Assoc, PC*, 485 Mich 20, 28; 780 NW2d 272 (2010) (citation omitted), and the Legislature should "'speak in no uncertain manner when it seeks to abrogate the plain and long-established rules of the common law.'" *People v Serra*, 301 Mich 124, 130; 3 NW2d 35 (1942) (citation omitted). Yet the majority, without citation and with only a cursory analysis, eviscerates longstanding precedent on an issue that the parties were not directed to brief.[2]

Because I believe that the majority prematurely or unnecessarily reaches the aforementioned issues, I respectfully dissent.

Michael F. Cavanagh

---

[2] In making its sweeping assertion, the majority also turns a blind eye to MCL 767.45(1)(c), which suggests that, if a defendant raises the issue before it is submitted to a jury, a verdict can be set aside "by reason of failure to *prove* that the offense was committed in the county . . . of the court" and, as a result, leaves the bench and bar with little guidance as to the appropriate burden of proof for claims regarding the prosecution's failure to prove venue.